**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NATIONAL JOB CORPS ASSOCIATION, JOCELYN RIVERA, ADAMS AND ASSOCIATES, INC., ALTERNATE PERSPECTIVES, INC., EDUCATION & TRAINING RESOURCES, LLC, STRATEGIX MANAGEMENT, LLC, TRANSPORTATION COMMUNICATIONS UNION/IAM, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF LABOR, LORI CHAVEZ-DEREMER, in her official capacity as Secretary, Department of Labor, <br><br> *Defendants*. | Civil Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................................iii

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND .................................................................................................................3

LEGAL STANDARD..........................................................................................................6

ARGUMENT ......................................................................................................................7

    I.    Plaintiffs Are Likely to Succeed on the Merits. ..............................................7

        A.    Defendants' unilateral decision to terminate Job Corps via mass terminations contravenes that statutory scheme and exceeds their statutory authority...................8

        B.    Defendants' actions are arbitrary and capricious. ....................................................11

    II.    Plaintiffs Will Suffer Immediate, Irreparable Harm Without Preliminary Injunctive Relief. ...................................................................................................13

    III.  The Balance of Equities and the Public Interest Favor Preliminary Injunctive Relief. ...................................................................................................15

CONCLUSION...................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*725 Eatery Corp. v. City of New York*,
    408 F. Supp. 3d 424 (S.D.N.Y. 2019) ...................................................................7

*AIDS Vaccine Advoc. Coalition v. U.S. Dep't of State*,
    No. 25 Civ. 00400, 2025 WL 752378 (D.D.C. Mar. 10, 2025).........................10, 11, 12, 13

*Airbnb, Inc. v. City of New York*,
    373 F. Supp. 3d 467 (S.D.N.Y. 2019) ...................................................................7

*Am. Broadcasting Cos., Inc. v. Cuomo*,
    570 F.2d 1080 (2d Cir. 1977) ...............................................................................6

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
    784 F.3d 887 (2d Cir. 2015) .................................................................................6

*Bennett v. Spear*,
    520 U.S. 154 (1997)..............................................................................................7

*Biden v. Texas*,
    597 U.S. 785 (2022)..............................................................................................7

*Bufkin v. Collins*,
    145 S. Ct. 728 (2025)............................................................................................8

*Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health & Hum. Servs.*,
    No. 25 Civ. 02847, 2025 WL 973718 (N.D. Cal. Apr. 1, 2025) .........................14

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
    No. 25 Civ. 02847, 2025 WL 1233674 (N.D. Cal. Apr. 29, 2025) ...................8, 9

*Colorado v. U.S. Dep't of Health & Hum. Servs.*,
    No. 25 Civ. 00121, 2025 WL 1426226 (D.R.I. May 16, 2025)...........................13

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
    140 S. Ct. 1891 (2020)........................................................................................13

*Dickson v. Sec'y of Def.*,
    68 F.3d 1396 (D.C. Cir. 1995).............................................................................11

*Eng v. Smith*,
    849 F.2d 80 (2d Cir. 1988) ...................................................................................7

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009) ................................................................13

*Free Country Ltd. v. Drennen*,
    235 F. Supp. 3d 559 (S.D.N.Y. 2016) ....................................................6

*HarperCollins Publishers L.L.C. v. Gawker Media LLC*,
    721 F. Supp. 2d 303 (S.D.N.Y. 2010) ....................................................6

*L.V.M. v. Lloyd*,
    318 F. Supp. 3d 601 (S.D.N.Y. 2018) ....................................................7

*League of Women Voters of the U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ..................................................................15

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*,
    965 F.2d 1224 (2d Cir. 1992) .................................................................6

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)................................................................................11

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*,
    595 U.S. 109 (2022)................................................................................9

*New York v. U.S. Dep't of Health & Hum. Servs.*,
    414 F. Supp. 3d 475 (S.D.N.Y. 2019) ..................................................12

*Nken v. Holder*,
    556 U.S. 418 (2009)................................................................................6

*O'Toole v. Wrobel (In re Sledziejowski)*,
    533 B.R. 408 (Bankr. S.D.N.Y. 2015)..................................................13

*Pacito v. Trump*,
    No. 25 Civ. 255, 2025 WL 655075 (W.D. Wash. Feb. 28, 2025) ........13

*Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Human Servs.*,
    337 F. Supp. 3d 308 (S.D.N.Y. 2018) ..................................................15

*Pub. Citizen, Inc. v. Fed. Aviation Admin.*,
    988 F.2d 186 (D.C. Cir. 1993)..............................................................12

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ..............................................................15

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) .............................................................................6

*Sampson v. Murray*,
    415 U.S. 61 (1974)..........................................................................................13

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*,
    877 F.2d 1120 (2d. Cir. 1989) .......................................................................6

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015) ...........................................................3

*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985).......................................................................14

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
    No. 25 Civ. 00097, 2025 WL 1116157 (D.R.I. Apr. 15, 2025).................9, 14

## STATUTES

2 U.S.C. § 681................................................................................................10

2 U.S.C. § 683................................................................................................11

5 U.S.C. § 706(2)(C).......................................................................................8

29 U.S.C. § 3191(1).....................................................................................9, 15

29 U.S.C. § 3193.............................................................................................8

29 U.S.C. § 3209(j)......................................................................................9, 10

29 U.S.C. § 3211(c).......................................................................................10

## FEDERAL RULES

Fed. R. Civ. P. 65(c) .......................................................................................16

Plaintiffs the National Job Corps Association ("NJCA"), Adams and Associates, Inc., Alternative Perspectives, Inc. ("API"), Education & Training Resources ("ETR"), Strategix Management LLC, the Transportation Communications Union/IAM ("TCU"), and Jocelyn Rivera respectfully submit this memorandum of law in support of their motion for a temporary restraining order and preliminary injunction declaring that Defendants' May 29, 2025 elimination of the federal Job Corps program violated the Administrative Procedure Act ("APA") and was *ultra vires*, and directing Defendants to halt enforcement of any actions to eliminate the Job Corps program, including halting enforcement of contract termination notices and stop work orders issued on or around May 29. Absent immediate Court intervention, Plaintiff Job Corps operators will be forced to start winding down their operations in short order, and the individual Plaintiffs will be forced to leave their homes on Job Corps campuses, to meet the June 30, 2025 deadline to stop all work on the program.

## PRELIMINARY STATEMENT

On May 29, 2025, the U.S. Department of Labor ("DOL") abruptly eliminated the Congressionally mandated Job Corps program, announcing the termination of all private contracts supporting the program. Job Corps is a longstanding, successful program that serves at-risk youth. For 60 years, it is has offered young people from underprivileged backgrounds life skills and trade training—and, for many participants, the program has provided the only home that they have.

DOL's elimination of Job Corps—the culmination of a monthslong campaign against the program—is illegal. As an initial matter, Congress created the program and has specifically appropriated funds for its continued operation. Furthermore, Congress has set forth specific steps that Defendants must take before shutting down any individual Job Corps campus, which Defendants have not followed. In any event, the elimination is arbitrary and irrational on its face. Defendants' claim that the elimination is necessary in light of budget deficits in the program makes

1

no sense: It is akin to a doctor claiming that she needs to kill a patient in order to prevent her catching cold. If Defendants were sincere in their desire to rectify the program's budget deficits they could have simply tried to cancel some subset of the program's contracts, or reduced some contracts' scope of work, rather than eliminating the program wholesale. It is plain that DOL undertook no process to actually examine the relevant data, but decided it simply no longer wished to continue a Congressionally mandated and funded program that the Administration summarily deemed no longer worthy of support.

The effects of Defendants' unlawful act will be immediate, devastating, and irreversible. Among other things, if this Court does not intervene, thousands of children and young adults who live on Job Corps residential campuses, and have no home to return to, will effectively be turned out into the street over the course of the next few weeks. More broadly, the termination of Job Corps contracts will result in the immediate displacement of more than 20,000 students, the elimination of thousands of jobs, the destruction of multiple companies (several of which have invested decades into the Job Corps program), and the loss of substantial expertise in the operation of the program.

In these circumstances, emergency injunctive relief is both warranted and necessary to maintain the status quo while the Court more fully considers the illegality of Defendants' actions.[1]

---

[1] The Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion") and this Memorandum of Law are supported by the declarations of Jocelyn Rivera ("Rivera Decl."); Donna Hay, National Job Corps Association ("Hay Decl."); Jennifer Wild, Alternative Perspectives, Inc. ("Wild Decl."); Susan Larson, Adams and Associates, Inc. ("Larson Decl."); Jonathan Crawley, Strategix Management LLC ("Crawley Decl."); Brian Fox, Education & Training Resources ("Fox Decl."); Arthur Maratea, Transportation Communications Union/IAM ("Maratea Decl."); and Augustus Collins ("Collins Decl.").

## BACKGROUND

Job Corps is the nation's largest residential employment and workforce development program for youth.[2] It trains and educates young people, 16 to 24 years old, from disadvantaged backgrounds, including individuals who dropped out of school; who are homeless; who are in, or have aged out of, the foster care system; and who require additional career and technical instruction to obtain and retain employment.[3] Job Corps participants face significant barriers to education and employment.[4] For example, in Program Year 2019, 56.9 percent of enrollees had no high school diploma or equivalency at program entry.[5]

The program's ultimate objective is to assist eligible youth to become more employable, self-sufficient, and responsible citizens.[6] Accordingly, each Job Corps center provides disadvantaged youth with career technical programs, intensive personal and career counseling, and job placement services into a registered apprenticeship, entry-level job, or the military.[7] Job Corps also provides most of its students with residential services,[8] as well as meals, health care, child care, driver's education, and counseling.[9] The program is unique among federal workforce training

---

[2] DOL, Congressional Budget Justification: Employment and Training Administration, Job Corps FY 25 https://www.dol.gov/sites/dolgov/files/general/budget/2025/CBJ-2025-V1-04.pdf (last visited May 30, 2025).

[3] Job Corps: A Primer. Congressional Research Service. Aug. 3, 2022, https://www.congress.gov/crs-product/R47208, (last visited May 30, 2025). This Court may take judicial notice of, among other things, documents retrieved from government websites. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015).

[4] *Id.*

[5] DOL, Job Corps Program Year (PY) 2019 Annual Performance Report. https://jobcorps-gov.s3.us-west-2.amazonaws.com/2023-04/PY%202019%20WIOA%20Job%20Corps%20Annual%20Report%20and%20Appendix.pdf (last visited May 31, 2025).

[6] Job Corps: A Primer, *supra* note 3.

[7] Congressional Budget Justification: Employment and Training Administration, *supra* note 2.

[8] *Id*.

[9] Job Corps: A Primer, *supra* note 3.

programs due to its primarily residential setting,[10] its national scope (in all 50 states, Puerto Rico and the District of Columbia),[11] and its use of private sector contractors to operate the centers.[12]

There are currently 123 Job Corps campuses. The vast majority of these campuses are operated under competitive procurements by private sector companies.[13] The U.S. Department of Agriculture ("USDA") operates 24 campuses as Job Corps Civilian Conservation Centers ("CCCs").[14] Notably, these campuses are not included in the shutdown.[15] During the first Trump administration, there was an attempt to end USDA's management of the Job Corps CCCs and close several Job Corps CCC campuses.[16] Congress responded by passing an appropriations policy rider that prohibits changes to the interagency operating agreement between DOL and USDA or closing Job Corps CCCs without maintaining the capacity of the program.[17]

Consistent with that Congressional action, and given the program's scope and success, the Job Corps program retains strong bipartisan support.[18] Nevertheless, DOL has taken a series of actions since mid-March of 2025 to obstruct Job Corps' mission and lay the groundwork for its desired termination of the program. For example:

- DOL halted applicant background checks, which effectively prevented new enrollment as students must pass a background check when they are admitted.[19]

---

[10] *Id.*
[11] Congressional Budget Justification: Employment and Training Administration, *supra* note 2.
[12] Job Corps: A Primer, *supra* note 3.
[13] Congressional Budget Justification: Employment and Training Administration, *supra* note 2.
[14] *Id.*
[15] Feldman Decl. Ex. A ("Job Corps Operations Pause FAQs." U.S. Department of Labor).
[16] DOL, "U.S. Department of Labor Job Corps Announcement." May 24, 2019. https://www.dol.gov/newsroom/releases/eta/eta20190524
[17] 4 Further Consolidated Appropriations Act, 2024. P.L. 118-47 Division D, Title I, Section 115. https://www.congress.gov/bill/118th-congress/house-bill/2882/text
[18] Guthrie, B., Bishop, et al., Job Corps Fiscal Year 2026 Dear Colleague Letter, May 23, 2025. https://njcaweb.org/wp-content/uploads/2025/05/Job-Corps-FY26-Letter-FINAL-w.-Signatures-Reps.-Brett-Guthrie-and-Sanford-Bishop.pdf (last visited May 30, 2025).
[19] *Budget Hearing - U.S. Department of Labor: Hearing before the U.S. House Appropriations Subcommittee on Labor, Health and Human Services, Education and Related Agencies*, 119th Cong. (Testimony of Secretary of Labor Lori Chavez-DeRemer).

- On April 11, 2025, DOL discontinued dedicated student Career Transition Readiness ("CTR") programs and student medical testing requirements.[20]

- On April 23, 2025, all pending or outstanding Job Corps procurements except for three were abruptly canceled.[21]

- On April 25, 2025, DOL released a "Job Corps Transparency Report,"[22] which applies a flawed methodology and reflects selective and inaccurate performance measures, costs, and statistics, intended to significantly understate Job Corps' performance and overstate its costs. To take one glaring example, the report incorrectly allocates overhead costs of 38.65%, including the national costs of certain trade programs, to each Job Corps center, including centers that do not host those programs—thus inflating their reported costs.[23] Perhaps more importantly, the report fails to contextualize costs and outcomes that reflect COVID-19 pandemic restrictions imposed by DOL.[24] The COVID-19 pandemic seriously impacted Job Corps' typical operations, resulting in unprecedented challenges for the program.[25] As DOL has itself previously noted, any reasonable assessment of Job Corps performance must account for these impacts,[26] including increased cost per student and cost per graduate that resulted from COVID-19 safety measures.[27]

- On April 30, 2025, DOL effectively terminated its provision of internet service to Job Corps campuses.[28]

- On May 2, 2025, the White House Office of Management and Budget introduced a budget proposal that called for the elimination of the Job Corps Program, citing the flawed Transparency Report.[29]

---

[20] Feldman Decl. Exs. B-C (DOL, Directive: Job Corps Program Instruction Notice Nos. 24-10, 24-11)
[21] Hay Decl. ¶ 3.
[22] DOL, Job Corps Transparency Report 2025, https://www.dol.gov/sites/dolgov/files/ETA/jobcorps/reports/Job-Corps-Transparency-Report-2025.xlsx (last visited May 30, 2025).
[23] Id.
[24] Id.
[25] Job Corps Program Year PY 2019 Annual Performance Report. https://jobcorps-gov.s3.us-west-2.amazonaws.com/202304/PY%202019%20WIOA%20Job%20Corps%20Annual%20Report%20and%20Appendix.pdf (last visited May 31, 2025).
[26] Id.
[27] Id.
[28] Job Corps Data Center Notice 24-186 Internet Circuit Helpful Guidance
[29] Letter from Russel T. Vought, OBM Director to Susan Collins, Chair, Committee on Appropriations, (May 2, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/05/Fiscal-Year-2026-Discretionary-Budget-Request.pdf (last visited on May 30, 2025).

Finally, on May 29, 2025, DOL announced its intention to eliminate the program, and started issuing notice of terminations, mandating the shutdown of all operations at all privately run Job Corps campuses nationwide by June 30, 2025.[30]

## LEGAL STANDARD

In the Second Circuit, the standards for issuance of a temporary restraining order ("TRO") and a preliminary injunction are the same. *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016). To obtain injunctive relief, a plaintiff "must establish "(1) 'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)). The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The purpose of a TRO is to safeguard a party from irreparable damage until more lasting remedies, "such as a preliminary injunction, can be sought." *HarperCollins Publishers L.L.C. v. Gawker Media LLC*, 721 F. Supp. 2d 303, 305 (S.D.N.Y. 2010) (citing, *e.g.*, *Am. Broadcasting Cos., Inc. v. Cuomo*, 570 F.2d 1080 (2d Cir. 1977)); *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d. Cir. 1989) ("[t]he purpose of a temporary restraining order

---

[30] Rivera Decl. ¶ 13, Wild Decl. ¶ 8, Williams" Decl. ¶ 8, Larson Decl. ¶ 6, Crawley Decl. ¶ 8, Collins Decl. ¶ 8, Fox Decl. ¶ 8, Maratea Decl. ¶ 9, Hay Decl. 5.

is to preserve an existing situation *in status quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.") (internal citation omitted).

To establish a likelihood of success on the merits, a plaintiff "need not show that success is an absolute certainty," but only that "the probability of [their] prevailing is better than fifty percent." *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 480 (S.D.N.Y. 2019) (alteration in original) (quoting *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988)). Furthermore, a plaintiff "need not demonstrate a likelihood of success on the merits of every claim—rather, they need only 'show a likelihood of success on the merits of at least one of [their] claims.'" *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) (alteration in original) (citing *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018)).

## ARGUMENT

All four factors for obtaining injunctive relief favor Plaintiffs. Accordingly, the Court should issue a temporary restraining order and preliminary injunction halting Defendants' unlawful efforts to eliminate the Jobs Corps program.

## I.    Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs are likely to prevail on the merits of their claims that Defendants' elimination of Job Corps violates the APA, both because Defendants have exceeded their statutory authority and because the termination is arbitrary, capricious, and an abuse of discretion.

As a threshold matter, Defendants' decision to shut down Job Corps is a final agency action ripe for judicial review. Final agency actions are those (1) that "mark the consummation of the agency's decision-making process" and (2) "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quotation marks omitted). That test is undoubtedly met here. *See Biden v. Texas*, 597 U.S. 785, 808–09 (2022) (Department of Homeland Security decision to end the Migrant Protection

Protocols program was final agency action because it forbade staff "to continue the program in any way from that moment on" (internal quotations omitted)); *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, No. 25 Civ. 02847, 2025 WL 1233674, at *8 n.5 (N.D. Cal. Apr. 29, 2025). Eliminating Job Corps marks the end of Defendants' decision-making and has finally determined contractors' and students' (including Plaintiffs') rights with respect to the Job Corps program.

>   **A. Defendants' unilateral decision to terminate Job Corps via mass terminations contravenes that statutory scheme and exceeds their statutory authority.**

The APA authorizes this Court to hold unlawful and set aside final agency actions that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Defendants' decision to shut down all privately operated Job Corps campuses exceeds Defendants' statutory authority.

Congress established Job Corps through statutory provisions that do not permit DOL's wholesale elimination of the program. As an initial matter, DOL's elimination of the program directly contravenes Congress's direction that "[t]here *shall* be within the Department of Labor a 'Job Corps'." 29 U.S.C. § 3193 (emphasis added). "It is undisputed that the word 'shall' imposes a mandatory command." *Bufkin v. Collins*, 145 S. Ct. 728, 737 (2025). The executive branch thus cannot dictate that there *shall not* be within the Department of Labor a "Job Corps" absent Congressional approval.

Nor can the elimination of the program be squared with Congress's stated purpose to establish a program to "assist eligible youth to connect to the labor force by providing them with intensive social, academic, career and technical education, and service-learning opportunities, in primarily residential centers, in order for such youth to obtain secondary school diplomas or recognized postsecondary credentials," with the goal of helping students obtain "successful

careers, in in-demand industry sectors or occupations or the Armed Forces, that will result in economic self-sufficiency and opportunities for advancement," or enrollment in college or apprenticeship programs, and helping students become responsible citizens. 29 U.S.C. § 3191(1). Courts facing recent, similar attempts to shutter Congressionally mandated programs have held that these terminations violate the APA and have intervened to stop them. *See, e.g.*, *Cmty. Legal Servs. in E. Palo Alto* 2025 WL 1233674, at *9  (holding that government likely violated statute by "withholding funding for direct legal representation entirely, with no supplemental plan to ensure unaccompanied children have legal counsel 'to the greatest extent practicable,'" as required by law); *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, No. 25 Civ. 00097, 2025 WL 1116157, at *19 (D.R.I. Apr. 15, 2025) (holding agency exceeded its authority where it did not "pause individual, already-awarded funds for failure to comply with a grant agreement or because of a change in policy, but rather [sought] to freeze any access to all already-awarded funds under two statutes indefinitely, based solely on the fact that the funds came from those two statutes").

Furthermore, Congress has carefully delineated the scope of DOL's authority to shut down Job Corps campuses, and Defendants have run roughshod over those requirements. *First*, while the relevant statutory provision contemplates that DOL may close an individual Job Corps center, *see* 29 U.S.C. § 3209(j) (setting out requirements that must be met "[p]rior to the closure of any Job Corps center"), it does not authorize the Secretary to unilaterally close *all* privately run Job Corps centers. But it is axiomatic that administrative agencies like DOL "possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022); *Woonasquatucket River Watershed Council*, 2025 WL 1116157, at *2 ("Agencies do not have unlimited authority to further a President's agenda, nor do

9

they have unfettered power to hamstring in perpetuity two statutes passed by Congress during the previous administration."). *Second*, and in any event, "[p]rior to the close of any Jobs Corps center," the Secretary of Labor must first ensure "that the proposed decision to close the center is announced in advance to the general public through publication in the Federal Register or other appropriate means," with a "reasonable comment period, not to exceed 30 days, for interested individuals to submit written comments to the Secretary." 29 U.S.C. § 3209(j). But here, the Secretary provided no such notice or opportunity for comment. Indeed, during her testimony to Congress roughly two weeks ago, the Secretary suggested that no final decision to terminate the program had been made when, as discussed above, multiple steps were already being taken in preparation of such decision. *See* DOL Budget Hearing, *supra* note 19. *Third*, Congress has required DOL to "establish written criteria to . . . determine when a Job Corps center . . . is to be closed and how to carry out such closure." 29 U.S.C. § 3211(c). In 2014, DOL promulgated a regulation pursuant to this requirement, identifying certain specified, five-year measures as the principal criteria on which to base closure decisions. There is no evidence or indication that DOL followed this (or any) written criteria in reaching its decision to eliminate the Job Corps program.

Defendants' decision to eliminate Job Corps also violates the Impoundment Control Act of 1974, which explicitly prohibits the Executive Branch from impounding appropriated funds without following certain procedures. 2 U.S.C. § 681 *et seq.*; *AIDS Vaccine Advoc. Coalition v. U.S. Dep't of State*, No. 25 Civ. 00400, 2025 WL 752378, at *14 (D.D.C. Mar. 10, 2025). Congress has funded the Job Corps program through at least June 30, 2026.[31] By terminating Job Corps contracts and de-obligating the funds without re-obligating the appropriated funds to other operators or indicating any intent to use those funds to continue operation of the Job Corps

---

[31] Full-Year Continuing Appropriations and Extensions Act, Pub. L. No., 119-4 § 138-677 (2025)

program, Defendants have impounded those funds without following the procedures set forth by Congress. In particular, DOL did not send a special message to Congress detailing the money to be deferred and the reasons for deferral, 2 U.S.C. § 683(a), and even then could only have halted the expenditure of allocated funds if both houses of Congress passed a bill to rescind the funding, *id.* § 683(b).

Finally, because Defendants' actions exceed their legal authority, they are also *ultra vires* and may be struck down on that basis as well. *See AIDS Vaccine Advoc. Coal.*, 2025 WL 752378, at *18 n. 18 (holding that "Plaintiffs would be likely to succeed on their claim that Defendants acted *ultra vires*," based on Defendants' "vast cancelation of congressionally appropriated aid").

### B. Defendants' actions are arbitrary and capricious.

The decision to eliminate Job Corps is a textbook example of arbitrary and capricious agency action. Under arbitrary-and-capricious review, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citation omitted). "Normally, an agency [decision] would be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem . . . or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* In considering an agency's action, the reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (citation omitted).

Defendants flunk this review at every step. Defendants' termination notices contain no reasoned explanation, at all, for the decision to shutter Job Corps. This failure alone violates the APA's requirements. *See Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (explaining that "[t]he requirement that agency action not be arbitrary and capricious includes a requirement

that the agency adequately explain its result" and holding invalid agency action where agency "failed to provide anything approaching a reasoned explanation for its decisions" (quoting *Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993))). Defendants *did* provide a cursory rationale in informal FAQs concerning the shutdown. Feldman Decl. Ex. A. But that rationale only underscores the irrationality of the decision. DOL focuses principally on a purported $140 million deficit in the program but offers zero explanation why terminating *all* private contracts supporting the program is a rational response to address the deficit. In an approximately $1.7 billion program, it obviously is not. DOL also asserts that the "highest graduation rate among all Job Corps centers was 65.4%" and that "[h]igh schools with graduation rates below 67% are generally considered low performing under federal law." Feldman Decl. Ex. A. But, again, DOL offers no "rational connection between the facts found and the choice made to impose an immediate and wholesale suspension" of the Job Corps program. *AIDS Vaccine Advoc. Coal.*, 2025 WL 752378, at *10 (cleaned up). More broadly, DOL's decision appears to rest entirely on the fundamentally flawed Transparency Report. This, too, is a basis for vacating the decision. *See, e.g.*, *New York v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 545-46 (S.D.N.Y. 2019) ("Where the record does not support an agency's stated factual basis for a decision, the agency has acted in an arbitrary and capricious manner, and its decision must be set aside." (cleaned up)).

Furthermore, DOL failed to consider the extraordinarily harmful consequences of its decision on Job Corps' students and staff and the companies that operate its campuses. As explained in more detail below, the abrupt halt of the Job Corps program will devastate students, cause widespread job losses, and destroy companies that invested extensive resources into this program in reliance on the government's policies. DOL's failure to consider and address these

consequences in making its decision is also fatal to the viability of that decision. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1913 (2020) ("When an agency changes course . . . it must be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.") (cleaned up); *Colorado v. U.S. Dep't of Health & Hum. Servs.*, No. 25 Civ. 00121, 2025 WL 1426226, at *17 (D.R.I. May 16, 2025) (holding decision "arbitrary and capricious because it failed to consider the States' reliance interests on the funds and the devastating consequences that would result from abruptly terminating critical public health appropriations"); *Pacito v. Trump*, No. 25 Civ. 255, 2025 WL 655075, at *11 (W.D. Wash. Feb. 28, 2025) ("[W]hen an agency effectively rescinds its existing, longstanding policies, it must consider any serious reliance interests it may have engendered, determine whether they are significant, and weigh them against competing policy concerns." (cleaned up)); *AIDS Vaccine Advoc. Coal.*, 2025 WL 752378, at *10 (similar).

## II.     Plaintiffs Will Suffer Immediate, Irreparable Harm Without Preliminary Injunctive Relief.

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *O'Toole v. Wrobel* (*In re Sledziejowski*), 533 B.R. 408, 422 (Bankr. S.D.N.Y. 2015) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). The harm must be "neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). It is difficult to imagine more obvious, imminent, and irreparable harm than the harm caused by Defendants' decision to shut down Job Corps.

The more than 20,000 students that Job Corps serves on privately operated campuses—including the individual Plaintiffs here—will be instantly and irreversibly deprived of the critical training and stability that the program provides. Students who have worked for months towards

certifications will simply lose the opportunity to complete those programs. In addition, Job Corps is principally a residential program: Accordingly, terminating the program will throw thousands of students out of their homes, many of whom have no home to return to because they were either homeless or in foster care before they came to Job Corps. Furthermore, instead of attempting to ameliorate these obvious harms, DOL has worked to compound them. It initially instructed Job Corps centers to start separating students on mere days' notice and to complete that process by June 6.[32] Perhaps recognizing the chaos that instruction would cause (albeit belatedly), DOL has backtracked on that deadline, but its arbitrary approach continues to cause severe confusion.[33]

Plaintiff operators (and all of Plaintiff NJCA's private member organizations) cannot exist without DOL support and will need to cease operations. This is, indisputably, irreparable harm. *See Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (explaining that even "[r]ecoverable monetary loss may constitute irreparable harm" "where the loss threatens the very existence of the movant's business"). These entities will have to lay off their staff, *see e.g. Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health & Hum. Servs.*, No. 25 Civ. 02847, 2025 WL 973318, at *3 (N.D. Cal. Apr. 1, 2025) (holding that laying off staff constitutes irreparable harm), and end their current work, *see, e.g., Woonasquatucket River Watershed Council*, 2025 WL 1116157, at *21-23 (crediting movant's assertion of "ending current projects" as irreparable harm), undermining their mission, *see, e.g., Cmty. Legal Servs.*, 2025 WL 973318, at *3 (finding irreparable harm where "Defendants' termination of funding . . . directly interferes with Plaintiffs' missions"), and causing "incalculable damage to the relationship between [Plaintiffs] and the communities they serve," *Woonasquatucket River Watershed Council*, 2025 WL 1116157, at *21. Plaintiff NJCA will suffer

---

[32] Feldman Decl. Ex. D (Termination Notices).
[33] Feldman Decl. Ex. E (DOL May 31, 2025 Communication); Feldman Decl. Ex. F (DOL June 1, 2025 Communication).

similar, irreparable injuries to its own ability to survive as an ongoing enterprise and to accomplish its core mission, *see League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (finding irreparable harm where "new obstacles unquestionably make it more difficult for the [plaintiffs] to accomplish their primary mission"), as will Plaintiff Transportation Communications Union, which will see its program to deliver advanced training to Job Corps students shuttered. *See* Maratea Decl. ¶¶10, 17-18; Larson Decl. ¶¶ 18-20; Fox Decl. ¶¶ 10-11; Crawley Decl. ¶¶ 9-10; Wild Decl. ¶¶ 9-10.

## III.    The Balance of Equities and the Public Interest Favor Preliminary Injunctive Relief.

In sharp contrast to the severe harms Plaintiffs suffer absent immediate injunctive relief, Defendants will not suffer any material harm from a pause in their termination of Job Corps. Indeed, the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Similarly, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018) (quoting *Newby*, 838 F.3d at 12). To the contrary, "there is a substantial public interest in 'having governmental agencies abide by the federal laws that govern their existence and operations.'" *Id.* (quoting *Newby*, 838 F.3d at 12). Furthermore, as Congress recognized when it created the Job Corps program, the services the program provides plainly serve the public interest by "support[ing] responsible citizenship" and "assist[ing] eligible youth to connect to the labor force," leading them to "successful careers, in in-demand industry sectors or occupations or the Armed Forces, that will result in economic self-sufficiency and opportunities for advancement" or "enrollment in postsecondary education." 29 U.S.C. § 3191(1).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a TRO and preliminary injunction should be granted. Plaintiffs further request that the Court waive the requirement that Plaintiffs post security pursuant to Federal Rule of Civil Procedure 65(c) or, in the alternative, require Plaintiffs to post nominal security.

Dated: June 3, 2025                                    Respectfully submitted,

/s/ Maximilian L. Feldman
Maximilian L. Feldman
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel.: (212) 763-0883
Fax: (212) 564-0883
mfeldman@heckerfink.com

Amy Jeffress*
Minahil Khan*
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, D.C. 20001
Tel.: (212) 763-0883
Fax: (212) 564-0883
ajeffress@heckerfink.com
mkhan@heckerfink.com

*Counsel for Plaintiff National Job Corps Association*

/s/ Benjamin D. White
Benjamin D. White, Esq.
Michael L. Bloch, Esq.
Arielle Gerber, Esq.**
BLOCH & WHITE LLP
152 West 57th Street, 8th Floor
New York, NY 10019
(212) 901-3825
bwhite@blochwhite.com
mbloch@blochwhite.com
agerber@blochwhite.com

*Counsel for Plaintiff Jocelyn Rivera*

16

/s/ Tiffinay Pagni, Esq.*
Vice-President & General Counsel
ADAMS AND ASSOCIATES, INC.
6151 Lakeside Drive, Ste. 1000
Reno, NV 89511
Tel.: (775) 348-0900
tpagni@adamsaai.com

*Counsel for Plaintiffs Adams and Associates, Inc. and Education & Training Resources, LLC*

/s/ Daniel J. Strouse*
CORDATIS LLP
1011 Arlington Blvd. Suite 375
Arlington, VA  22209
Tel.: (202) 342-2550
dstrouse@cordatislaw.com

*Counsel for Plaintiff Alternate Perspectives, Inc.*

/s/ Ambika J. Biggs*
HIRSCHLER FLEISCHER, A PROFESSIONAL CORPORATION
1676 International Drive, Suite 1350
Tysons, VA  22102
Tel.: (703) 584-8361
Fax: (703) 584-8901
abiggs@hirschlerlaw.com

*Counsel for Plaintiff Strategix Management, LLC*

/s/ Carla M. Siegel*
General Counsel
INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO
9000 Machinists Place
Upper Marlboro, MD 20772
Tel.: (301) 967-4510
csiegel@iamaw.org

*Counsel for Plaintiff Transportation Communications Union/IAM*

*Pro hac vice application forthcoming
** Admission forthcoming*

17