**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NATIONAL JOB CORPS ASSOCIATION, *et al.,*

                  Plaintiffs,

   – against –

DEPARTMENT OF LABOR*, et al.*

                Defendants.

No. 25 Civ. 04641 (ALC)

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel: (212) 637-2679/2748
*Attorney for Defendants*

JEAN-DAVID BARNEA
DOMINIKA TARCZYNSKA
*Assistant United States Attorneys*
   – Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

    A.   The Job Corps Program ................................................................................... 2

    B.   DOL Contracts for Operation of Job Corps Centers....................................... 2

    C.   The Job Corps Transparency Report and Private Center Operations Pause ................... 3

    D.   Job Corps Contract Terminations.................................................................... 5

    E.   This Litigation................................................................................................. 6

STANDARD OF REVIEW ....................................................................................................... 6

ARGUMENT ........................................................................................................................... 7

I.    This Court Lacks Jurisdiction over Plaintiffs' Claims ........................................... 7

    A.   This Court Lacks Subject Matter Jurisdiction Over Disputes Arising from the
        Termination of Government Contracts ........................................................... 7

    B.   NJCA and Plaintiff Rivera Lack Standing to Challenge the Contract Terminations. .... 12

II.    Plaintiffs Do Not Demonstrate a Likelihood of Success on the Merits........................ 15

    A.   Plaintiffs Cannot Establish that DOL Acted Illegally or *Ultra Vires*, or Violated the
        Separation of Powers ..................................................................................... 15

    B.   Plaintiffs Cannot Establish that DOL Acted Arbitrarily and Capriciously .................. 19

III.    Plaintiffs Have Not Shown Irreparable Harm............................................................. 21

IV.    A Preliminary Injunction Would Not Serve the Public Interest.................................... 23

V.    Any Injunction Ordered in This Case Should Be Narrowly Tailored and Require
    Plaintiffs to Post a Bond ............................................................................................ 25

CONCLUSION.......................................................................................................................... 26

# TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(s)**

*A.H. ex rel. Hester v. French*,
   985 F.3d 165 (2d Cir. 2021) ............................................................... 7

*Air Transp. Ass'n of Am. v. Reno*,
   80 F.3d 477 (D.C. Cir. 1996) ............................................................. 14

*Albrecht v. Comm. on Emp. Benefits*,
   357 F.3d 62 (D.C. Cir. 2004) .......................................................... 9, 10

*Apter v. Dep't of Health & Human Servs.*,
   80 F.4th 579 (5th Cir. 2023) ............................................................. 18

*Atari Interactive, Inc. v. Printify, Inc.*,
   714 F. Supp. 3d 225 (S.D.N.Y. 2024) ............................................... 22

*Atterbury v. U.S. Marshals Serv.*,
   805 F.3d 398 (2d Cir. 2015) ............................................................. 10

*Barton v. U.S. Dep't of Labor*,
   757 F. Supp. 3d 766 (E.D. Ky. 2024) ............................................... 25

*Bionpharma Inc. v. CoreRx, Inc.*,
   582 F. Supp. 3d 167 (S.D.N.Y. 2022) .......................................... 24, 25

*Bochese v. Town of Ponce Inlet*,
   405 F.3d 964 (11th Cir. 2005) .......................................................... 13

*Borey v. Nat'l Union Fire Ins. Co.*,
   934 F.2d 30 (2d Cir. 1991) .......................................................... 22, 23

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) .......................................................................... 12

*Cauff, Lippman & Co. v. Apogee Fin. Group, Inc.*,
   807 F. Supp. 1007 (S.D.N.Y. 1992) ................................................. 13

*Cohen v. Postal Holdings, LLC*,
   873 F.3d 394 (2d Cir. 2017) ............................................................... 8

*Dabney v. Reagan*,
   542 F. Supp. 756 (S.D.N.Y. 1982) ................................................... 17

*Dalton v. Specter*,
    511 U.S. 462 (1994) ........................................................................................ 19

*Davis v. Pension Ben. Guar. Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) ..................................................................... 24

*Dep't of Educ. v. California*,
    145 S. Ct. 966 (Apr. 4, 2025) ..................................................................... 9, 12

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) .............................................................................. 19, 20, 21

*Fed. Express Corp. v. U.S. Dep't of Commerce*,
    39 F.4th 756 (D.C. Cir. 2022) ....................................................................... 18

*Freedom Holdings, Inc. v. Spitzer*,
    408 F.3d 112 (2d Cir. 2005) .......................................................................... 21

*Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) ....................................................................... 22

*Gen. Land Off. v. Biden*,
    722 F. Supp. 3d 710 (S.D. Tex. 2024) ........................................................... 17

*Geyen v. Marsh*,
    775 F.2d 1303 (5th Cir. 1985) ....................................................................... 18

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007) ........................................................................ 7, 23

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) .................................................................................. 13, 14

*Ingersoll-Rand Co. v. United States*,
    780 F.2d 74 (D.C. Cir. 1985) ..................................................................... 10, 11

*James v. Caldera*,
    159 F.3d 573 (Fed. Cir. 1998) ....................................................................... 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................... 13

*M.E.S., Inc. v. Snell*,
    712 F.3d 666 (2d Cir. 2013) ............................................................................ 8

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994)..................................................................................... 25

*Magellan Tech., Inc. v. FDA*,
    70 F.4th 622 (2d Cir. 2023)........................................................................... 20

*Maryland v. Corp. for Nat'l & Community Serv.*,
    No. CV DLB-25-1363, 2025 WL 1585051 (D. Md. June 5, 2025) ................................. 25

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012)..................................................................................... 9

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982)....................................................................... 10

*Moore v. Consolidated Edison Co. of N.Y., Inc.*,
    409 F.3d 506 (2d Cir. 2005)........................................................................... 22

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29, 43 (1983).................................................................................. 20

*Napoli-Bosse v. Gen. Motors, LLC*,
    No. 22-1861-cv, 2023 WL 7485796 (2d Cir. Nov. 13, 2023) ........................................... 13

*New York v. Trump*,
    2025 WL 715621 n.13 (D.R.I. Mar. 6, 2025)..................................................... 17

*New York v. U.S. Dep't of Educ.*,
    477 F. Supp. 3d 279 (S.D.N.Y. 2020) ............................................................. 21

*New York v. U.S. Dep't of Homeland Security*,
    969 F.3d 42 (2d Cir. 2020) ...................................................................... 21, 25

*Nken v. Holder*,
    556 U.S. 418 (2009)..................................................................................... 23

*Pac. Gas & Elec. Co. v. United States*,
    838 F.3d 1341 (Fed. Cir. 2016) ...................................................................... 14

*People for Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
    797 F.3d 1087 (D.C. Cir. 2015)....................................................................... 13

*Perry Capital LLC v. Mnuchin*,
    864 F.3d 591 (D.C. Cir. 2017)........................................................................ 10

*Presidential Gardens Assocs. v. United States ex rel. Sec'y of HUD.*,
    175 F.3d 132 (2d Cir. 1999) ..................................................................................... 9

*Pub. Citizen v. Stockman*,
    528 F. Supp. 824 (D.D.C. 1981) ............................................................................ 17

*Rodriguez ex rel. Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999) .................................................................................. 22

*Rynasko v. N.Y. Univ.*,
    63 F.4th 186 (2d Cir. 2023) ................................................................................... 13

*Safe Step Walk-In Tub Co. v. CKH Indus., Inc.*,
    No. L 5-CV-07543 (NSR), 2015 WL 6504284 (S.D.N.Y. Oct. 26, 2015) ....................... 22

*Sardarian v. Fed. Emergency Mgmt. Agency*,
    No. 3:19-CV-00910 (OAW), 2022 WL 4080325 (D. Conn. Apr. 1, 2022) ...................... 14

*Spectrum Leasing Corp. v. United States*,
    764 F.2d 891 (D.C. Cir. 1985) ............................................................................10, 11

*Students for Fair Admissions v. U.S. Mil. Acad. at West Point*,
    709 F. Supp. 3d 118 (S.D.N.Y. 2024) .................................................................... 6, 7

*Sullivan v. United States*,
    625 F.3d 1378 (Fed. Cir. 2010) ............................................................................. 15

*TeeVee Toons, Inc. v. Gerhard Schubert GmbH*,
    No. 00 Civ. 5189 (RCC), 2006 WL 2463537 (S.D.N.Y. Aug. 23, 2006) ........................ 13

*Texas Health Choice, L.C. v. Office of Personnel Mgmt.*,
    400 F.3d 895 (Fed. Cir. 2005) ................................................................................. 8

*Travelers United, Inc. v. Hyatt Hotels Corp.*,
    No. 23-2776, 2025 WL 27162 (D.D.C. Jan. 3, 2025) .................................................. 14

*Trump v. Sierra Club*,
    140 S. Ct. 1 (2019) .............................................................................................. 17

*United Aeronautical Corp. v. United States Air Force*,
    80 F.4th 1017 (9th Cir. 2023) ................................................................................. 8

*United States v. J&E Salvage Co.*,
    55 F.3d 985 (4th Cir. 1995) .................................................................................... 8

*Up State Fed. Credit Union v. Walker,*
　　198 F.3d 372 (2d Cir. 1999) ....................................................................... 10

*USA Network v. Jones Intercable, Inc.,*
　　704 F. Supp. 488 (S.D.N.Y. 1989) ............................................................. 22

*Warth v. Seldin,*
　　422 U.S. 490 (1975).................................................................................... 15

*WildEarth Guardians v. Jewell,*
　　738 F.3d 298 (D.C. Cir. 2013)..................................................................... 14

*Window Covering Mfrs. Ass'n v. Consumer Prod. Safety Comm'n,*
　　82 F.4th 1273 (D.C. Cir. 2023) ................................................................... 21

*Winter v. Natural Resources Defense Council, Inc.,*
　　555 U.S. 7 (2008)..................................................................................... 7, 23

## STATUTES

2 U.S.C. § 681 .................................................................................................... 17

2 U.S.C. § 683(b) ............................................................................................... 17

2 U.S.C. § 684 .................................................................................................... 17

5 U.S.C. § 702 ...................................................................................................... 9

5 U.S.C. § 706(2)(A)............................................................................................. 6

5 U.S.C. § 706(2)(C) .......................................................................................... 18

28 U.S.C. § 1346(a)(2).......................................................................................... 9

28 U.S.C. § 1491(a)(1).......................................................................................... 9

29 U.S.C. § 3193 ................................................................................................ 16

29 U.S.C. § 3197(a)(1)(A) ............................................................................... 2, 16

29 U.S.C. § 3197(d) .............................................................................................. 2

29 U.S.C. § 3209(j).............................................................................................. 16

29 U.S.C. §§ 3191-3212 ....................................................................................... 2

41 U.S.C. § 7103 ................................................................................................................. 8

41 U.S.C. §§ 7101-7109 .................................................................................................... 3

**RULES**

Federal Rule of Civil Procedure 65(c) ......................................................................... 25, 26

**REGULATIONS**

48 C.F.R. Subpart 49.1 ........................................................................................................ 5

48 C.F.R. § 52.233-1 ........................................................................................................ 3, 8

48 C.F.R. § 52.249-1 ........................................................................................................ 3, 5

## PRELIMINARY STATEMENT

Defendants the U.S. Department of Labor and Lori Chavez-Deremer, in her official capacity as Secretary of Labor (the "Secretary" and collectively, "DOL"), by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to Plaintiffs' motion for a preliminary injunction, ECF No. 6 ("PI Mot."). For the reasons explained herein, the Court should not preliminarily enjoin DOL from terminating its contracts with private contractors who operate Job Corps centers around the country or from taking other steps, within the bounds of the law, to wind down certain contract operations of the Job Corps program. Attached hereto are declarations from Jillian Matz, one of DOL's Heads of Contracting Activity and the Contracting Officer for the Job Corps program ("Matz Decl."), and Erin McGee, the Acting Administrator of DOL's Office of Job Corps ("McGee Decl.").

DOL has issued a report showing that for the past several years, the Job Corps program has yielded poor results for its participants, at a high cost to the public fisc. In particular, the agency has concluded that this program has operated with increasing deficits and high costs per participant, and had low graduation rates and high rates of serious incidents involving participants. As a result, DOL has decided to terminate its contracts with the entities that operate the privately operated Job Corps centers. Plaintiffs are not entitled to preliminary injunctive relief to prevent the contract terminations. Most of the plaintiffs are private contractors whose claims relate to their contract terminations, over which this Court lacks subject-matter jurisdiction. And the remaining plaintiffs lack standing to pursue claims challenging the termination of contracts that they are not parties to. Moreover, contrary to Plaintiffs' arguments, DOL's actions have not violated any statute, nor have they exceeded the agency's statutory authority or violated the constitutional separation of powers. Plaintiffs also have not demonstrated that they will suffer irreparable harm from the termination of the contracts since the contractors, after exhausting their administrative remedies,

can pursue monetary claims to the extent they wish to challenge the terminations, and students departing the Job Corps program will be offered transition assistance. The equities and public interest thus weigh against injunctive relief, and the Court should thus deny Plaintiffs' motion.

## BACKGROUND

### A. The Job Corps Program

Job Corps is a no-cost nationwide residential career-training program for eligible young people ages 16 through 24 administered by DOL. *See* McGee Decl. ¶¶ 2-3. Job Corps assists students with completing their high school education and learning vocational and other skills in specific training areas. *Id.* ¶ 3. The program is authorized under Title I, Subtitle C, of the Workforce Innovation and Opportunity Act ("WIOA"), 29 U.S.C. §§ 3191-3212. *Id.* ¶ 2.

As of May 2025, Job Corps operated through 123 centers located around the country. *Id.* ¶ 4. Of these, 99 are operated by private contractors through contracts with the DOL. *Id.* ¶ 5. Additionally, the U.S. Department of Agriculture's ("USDA") Forest Service operates 24 Civilian Conservation Centers as part of the Job Corps program, *see* 29 U.S.C. § 3197(d). *Id.*

### B. DOL Contracts for Operation of Job Corps Centers

WIOA provides that DOL shall enter into an agreement with "with a Federal, State, or local agency, an area career and technical education school, a residential career and technical education school, or a private organization, for the operation of each Job Corps center." 29 U.S.C. § 3197(a)(1)(A). The contracts are awarded for an initial term of no more than two years. *Id.* § 3197(f). The agency may exercise a contractual option to renew the agreement in one-year increments for up to three additional years. *Id.*; *see* Matz Decl. ¶ 9.

DOL entered into contracts with private contractors to operate each of the 99 contracted Job Corps centers. Matz Decl. ¶ 5. DOL also entered into contracts with entities, such as Plaintiff Transportation Communications Union//IAM, to provide vocational training and other services at

Job Corps centers. *Id.* ¶¶ 10-11. All of DOL's contracts with private contractors incorporate by reference certain standard provisions from the Federal Acquisition Regulation ("FAR"), including FAR 52.249-1 (Termination for Convenience of the Government (Fixed Price) (Short Form)) and FAR 52.233-1 (Disputes), 48 C.F.R. §§ 52.249-1, 52.233-1. *See* Matz Decl. ¶¶ 6-8, 11 & Exs. 1-2.

The Termination for Convenience of the Government clause in these contracts allows the agency's Contracting Officer to terminate the contract when it is in the Government's interest, by providing written notice to the contractor. *Id.* ¶ 7 (citing 48 C.F.R. § 52.249-1). The FAR Disputes clause indicates that the contracts at issue are subject to the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101-7109, and that except as provided in that statute, "all disputes arising under or related to this contract shall be resolved under this clause." *Id.* ¶ 8 (quoting 48 C.F.R. § 52.233-1(a)-(b)).

### C.  The Job Corps Transparency Report and Private Center Operations Pause

On April 25, 2025, DOL released a Job Corps Transparency Report analyzing the recent financial performance and operation costs of the Job Corps program, accompanied by a press release. *See* McGee Decl. ¶ 7 & Exs. 1, 2 ("Transparency Report"). The report provided "a granular, data-centric examination of program expenditures and efficiency metrics, aggregating unmanipulated financial data and performance evaluations produced by [DOL's] national Job Corps Office." *Id.* Ex. 1. The report analyzed "the most recently available metrics from program year 2023, including cost per enrollee and per graduate." *Id.* Specifically, the report showed that the program had low average graduation rates (32% or 38%, depending on the definition), and high costs per enrollee and even higher costs per graduate. *Id.* It also showed that Job Corps participants earned relatively low average wages (less than $17,000 per year) after separating from the program. *Id.*

On May 29, 2025, DOL announced that it would begin a "phased pause in operations at contractor-operated Job Corps centers nationwide, initiating an orderly transition for students, staff, and local communities." *Id.* ¶ 8 & Ex. 3. DOL further explained that "[t]he decision follows an internal review of the program's outcome and structure and will be carried out in accordance with available funding, the statutory framework established under the Workforce Innovation and Opportunity Act, and congressional notification requirements." *Id.* Ex. 3. DOL announced that "[t]he pause of operations at all contractor-operated Job Corps centers will occur by June 30, 2025." *Id.* DOL's announcement noted that in program year 2024, the Job Corps program operated at a $140 million deficit, which necessitated "a pause in center operations to complete the program year." *Id.*; *see also* McGee Decl. ¶ 15 (describing the steps DOL took regarding that deficit). The announcement explained that the program deficit was projected to grow to $213 million in program year 2025. *See id.* Ex. 3. Moreover, DOL indicated that there had been almost 15,000 "serious incident reports" in Job Corps centers in 2023, including sexual assaults, acts of violence, drug use, and breaches of safety or security. *Id.*

Attached to the agency's announcement was a set of responses to frequently asked questions (FAQ) relating to the operations pause. *See* McGee Decl. ¶ 8 & Ex. 4. The document indicated that the agency's reason for pausing the operations at the contractor-operated centers was that "[t]he Job Corps program has been in a financial crisis for years, creating constant uncertainty for participants and administrators," citing the $140 million deficit in program year 2024 and the projected $213 million deficit for program year 2025. *Id.* Ex. 4 at Q9. The FAQ document further noted that "[a]ccording to the recently released Job Corps Transparency Report, the highest graduation rate among all Job Corps centers was 65.4%" and that "[h]igh schools with graduation rates below 67% are generally considered low performing under federal law." *Id.*

In the FAQ document, DOL explained that the pause in Job Corps operation occurred when the agency "halted contracts at the 99 contract-operated centers," which "led to the suspension of program operations." *Id.* at Q1. The document noted that DOL has the "authority to halt center operator contacts including program operations at Job Corps sites" based on the "Federal Acquisition Regulation and the contract clauses prescribed in the regulation [which] provide the government with the termination for convenience found in FAR (48 C.F.R. Subpart 49.1) and FAR Clauses 52.249-2, among others." *Id.* at Q2. The FAQ document indicated that operations of the 24 USDA centers were not being suspended by DOL, as they are operated by USDA. *Id.* at Q11.

### D.  Job Corps Contract Terminations

On or around May 29, DOL sent notices to the contractors operating the private Job Corps centers advising them that operations would cease as of June 30, 2025. Given the various contract end dates, the agency informed the contractors that the cessation would occur through either the termination or non-renewal of their contracts or limited extensions through June 30. *See* Matz Decl. ¶¶ 12-13. The termination notices provided that the contracts were being terminated for the Government's convenience in accordance with FAR 52.249-1. *See, e.g., id.* Ex. 5 at 1. The notices further directed the contractors to begin immediately "all work necessary to provide a safe, orderly, and prompt shutdown of center operations" which were to be completed by "June 30, 2025, at which time the contract [would] be considered terminated in its entirety." *Id.*

The Notices of Termination attached a document setting forth the Contracting Officer's Orders Regarding Orderly Shutdown of Center Operations. *Id.* at 6-8. This document included an instruction that the center operator take all necessary steps to ensure students are safely separated and transported to their home of record. *Id.* at 6. On June 1, 2025, DOL sent the contractors an email clarifying that "[t]he paramount consideration is the safety and well-being of students on center . . . there is no hard deadline for transferring students to their home of record, especially

where their safety and well-being are concerned. . . . We want to reiterate that [DOL] defer[s] to center operators regarding the length of time necessary to ensure that this transition is as safe and supportive as it can be in these circumstances." ECF No. 7-6 at 2 (emphasis omitted). This clarified that contractors could transfer the students at any time until the contract termination date of June 30, 2025.

### E.  This Litigation

On June 3, 2025, Plaintiffs filed the complaint in this action. ECF No. 1 ("Compl."). Plaintiffs include several contractors operating Job Corps centers under contracts with DOL (Adams and Associates, Inc., Alternate Perspectives, Inc., Education & Training Resources, LLC, and Strategix Management LLC), *id.* ¶¶ 4-7, and a labor union that offers job training at certain Job Corps centers under a contract with DOL (Transportation Communications Union/IAM) (collectively, the "Contractor Plaintiffs"), *id.* ¶ 8; *see also* ECF No. 14 ¶ 3; a trade organization founded to "represent operators in the Job Corps program" (the National Job Corps Association ("NJCA")), ECF No. 12 ¶ 2, *see also* Compl. ¶ 3; and a current student at the Glenmont Job Corps Center in Callicoon, New York (Jocelyn Rivera), *see* Compl. ¶ 9.

Plaintiffs allege that DOL's suspension of operations at Job Corps centers operated by private contractors violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C), was an *ultra vires* action, and violated the constitutional separation of powers. *Id.* ¶¶ 48-69. Plaintiffs also filed a motion seeking a temporary restraining order and preliminary injunction. ECF No. 5. On June 4, 2025, the Court entered a temporary restraining order and set a schedule for briefing and a hearing on Plaintiffs' motion for a preliminary injunction. ECF No. 23.

### STANDARD OF REVIEW

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Students for*

*Fair Admissions v. U.S. Mil. Acad. at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). To demonstrate its entitlement to this "extraordinary and drastic remedy," *Student for Fair Admissions*, 709 F. Supp. 3d at 129, a movant must clearly demonstrate: "(1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, (3) public interest weighing in favor of granting the injunction," and (4) "that the balance of equities tips in his or her favor," *A.H. ex rel. Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (cleaned up).

## ARGUMENT

### I.  This Court Lacks Jurisdiction over Plaintiffs' Claims

Plaintiffs cannot prevail in this case because this Court lacks subject matter jurisdiction over their claims—which at their core challenge the terminations or non-renewals of the relevant Job Corps contracts. *See, e.g.*, Compl. ¶ 22 ("Job Corps operators (including Plaintiffs) received termination and non-renewal notices for the operation of their respective Job Corps centers"); ¶ 44 ("Plaintiff operators had years left on their contracts with DOL, when the program was abruptly eliminated. Operators had made significant investments in reliance on DOL's funding."). The Contractor Plaintiffs' challenges to the termination of their contracts are subject to the Contract Disputes Act and cannot be heard by this Court. And the NJCA and Plaintiff Rivera lack standing to challenge the termination of contracts to which they are not parties.

### A.  This Court Lacks Subject Matter Jurisdiction Over Disputes Arising from the Termination of Government Contracts

The Contractor Plaintiffs are challenging the termination of their contracts with DOL. But each of those contracts is explicitly subject to the CDA, *see* Matz Decl. ¶¶ 8, 11 & Exs. 1-2

(incorporating by reference FAR 52.233-1), which sets forth exclusive procedures for resolving disputes related to termination of those contracts, including through litigation in the Court of Federal Claims.[1]

As the Second Circuit has explained, "in enacting the [CDA], Congress created a comprehensive scheme for securing relief from the United States for any disputes pertaining to federal contracts." *M.E.S., Inc. v. Snell*, 712 F.3d 666, 676 (2d Cir. 2013). The statutory scheme precludes the Contractor Plaintiffs from pursuing other types of claims for termination of their Job Corps operator contracts. *See id.* (holding that CDA precludes *Bivens* claims against federal employees in their individual capacities for alleged violations of due process or the First Amendment in terminating the plaintiff's contracts with the government); *see also United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1025 (9th Cir. 2023) ("hold[ing] that the CDA 'impliedly forbids' [plaintiff] from invoking the otherwise-applicable waiver of sovereign immunity contained in the APA."); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 402 (2d Cir. 2017) ("[t]he CDA grants the Court of Federal Claims exclusive jurisdiction over contract claims against the USPS" arising out of a lease agreement); *Texas Health Choice, L.C. v. Office of Personnel Mgmt.*, 400 F.3d 895, 898-99 (Fed. Cir. 2005) ("The CDA exclusively governs Government contracts and Government contract disputes" and, "[w]hen the [CDA] applies, it provides the exclusive mechanism for dispute resolution." (citations omitted)); *United States v. J&E Salvage Co.*, 55 F.3d 985, 988 (4th Cir. 1995) ("It is well-established . . . that disguised contract actions may not escape the CDA. Neither contractors nor the government may bring a

---

[1] Any claims subject to the CDA must first be presented to the agency's contracting officer. *See* 41 U.S.C. § 7103. If the contractor's claim is denied by the contracting officer (or is deemed denied if the contracting officer fails to issue a timely decision), the contractor can appeal the officer's decision to the Court of Federal Claims or to a board of contract appeals. *Id.* § 7104.

contract action in federal district court simply by recasting claims in tort language or as some statutory or regulatory violation." (citations omitted)).

The Tucker Act provides exclusive jurisdiction in the Court of Federal Claims for claims brought in federal court based on government contracts that are subject to the CDA. *See* 28 U.S.C. § 1346(a)(2) ("the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of [the CDA]"); *see also Presidential Gardens Assocs. v. United States ex rel. Sec'y of HUD.*, 175 F.3d 132, 143 (2d Cir. 1999) ("Where a claim arises out of a contract with the United States, the Tucker Act 'impliedly forbids' relief other than the remedy provided by the Court of Federal Claims."). Although the APA provides a limited waiver of sovereign immunity for claims "seeking relief other than money damages," 5 U.S.C. § 702, that waiver does not apply "'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,'" *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (Apr. 4, 2025) (quoting 5 U.S.C. § 702). This exception "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,* 567 U.S. 209, 215 (2012).

The Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Hence, "the Tucker Act 'impliedly forbids'" bringing "contract actions" against "the government in a federal district court" under the APA. *Albrecht v. Comm. on Emp. Benefits*, 357 F.3d 62, 67-68 (D.C. Cir. 2004). This jurisdictional divide ensures that contract claims against the Government are channeled to the court

that has "unique expertise", *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985), and (importantly here) that Congress has not empowered to grant injunctive relief like specific performance, *see James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998).

Accordingly, regardless of how a claim is styled, a district court lacks jurisdiction if the claim "is in its essence contractual." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (internal quotation marks omitted); *see also Albrecht*, 357 F.3d at 68. "Whether a claim is in essence a contract claim over which the Court of Federal Claims has exclusive jurisdiction depends on a two-pronged analysis: a court must examine both 'the source of the rights upon which the plaintiff bases [his] claims, and . . . the type of relief sought.'" *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015) (quoting *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999), and *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982).). Here, both prongs of this analysis establish that the Contractor Plaintiffs' challenge is in essence a contractual claim seeking the quintessential contract remedy of specific performance (*i.e.*, reinstatement of their Job Corps contracts) — a contract claim that may be filed only in the Court of Federal Claims where the only available remedy is money damages.

First, the Job Corps operator contracts are plainly the "the source of the rights upon which" the Contractor Plaintiffs base their claims. *Megapulse*, 672 F.2d at 968; *see also Up State Fed. Credit Union*, 198 F.3d at 377 (rejecting attempt "to characterize . . . action as an APA challenge rather than a contract dispute" by citing to a regulation where "the source of the rights at issue" was contract); *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985) (holding that where the Government is alleged to have violated a statute but "[t]he right to [] payments is created in the first instance by the contract," the claim is based in contract and falls within the Tucker Act). Under similar circumstances, the D.C. Circuit rejected a contractor's

claims that a contract termination violated two federal regulations and was arbitrary and capricious under the APA and that the contract should be reinstated. *Ingersoll-Rand*, 780 F.2d at 76-80. Since the claims depended on whether the contract permitted termination in the circumstances, and the dispute was thus "entirely contained within the terms of the contract," even if "the termination also arguably violate[d] certain other regulations," the court concluded that the claims ultimately sounded in contract, and thus belonged in the Court of Federal Claims. *Id.* at 78. The D.C. Circuit further concluded that the contractor's request for reinstatement "amount[ed] to a request for specific performance" of the contract. *Id.* at 80.

Second, the relief that the Contractor Plaintiffs seek is likewise contractual. While the complaint broadly discusses the potential elimination of the Job Corps program, the enumerated relief seeks to enjoin DOL from enforcing "the stop work orders and termination and non-renewal notices delivered to Job Corps center operators starting May 29, 2025" and from continuing "any shutdown tasks, job terminations, or student removals" that would result from those contract terminations and non-renewals. *See* Compl., Prayer for Relief ¶¶ e, f. The Contractor Plaintiffs are seeking the restoration of their contracts with the federal government—claims that clearly sound in contract. In essence, Plaintiffs seek "the classic contractual remedy of specific performance," a remedy that is unavailable against the Government. *Spectrum Leasing Corp.*, 764 F.2d at 894; *see also Ingersoll-Rand*, 780 F.2d at 79-80 (order "reinstating the original award of [a] contract . . . amount[ed] to a request for specific performance" and "[a] complaint involving a request for specific performance must be resolved by the Claims Court. . . [where plaintiff] will have available to it a damages remedy for wrongful termination of the contract."). The appropriate vehicle for a claim seeking damages for terminations allegedly undertaken in breach of contract is a "Tucker

Act [suit] in" the Court of Federal Claims, not an APA action. *Bowen v. Massachusetts*, 487 U.S. 879, 890 n.13 (1988).

The Supreme Court's recent order in *Department of Education v. California* confirms the contractual nature of the relief the Contractor Plaintiffs seek. The plaintiff grant recipients in that case challenged as arbitrary and capricious the agency's decision to terminate their grant agreements awarded under a statutory program. 145 S. Ct. at 968. The Supreme Court stayed the district court's order "enjoin[ing] the Government from terminating" the grants, concluding that the Government was "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA" because the claims arose under the Tucker Act. *Id.* The Court emphasized that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money.'" *Id.*

Accordingly, the Contractor Plaintiffs cannot prevail on their claims in this action because this Court lacks subject matter jurisdiction over their challenge to the termination of their Job Corps contracts.

### B. NJCA and Plaintiff Rivera Lack Standing to Challenge the Contract Terminations.

Unlike the Contractor Plaintiffs, the NJCA[2] and Plaintiff Rivera are not parties to contracts with DOL, nor are they in privity of contract, and accordingly they lack standing to challenge the termination of those contracts. At its "irreducible constitutional minimum," Article III standing requires a plaintiff, as the party invoking the Court's jurisdiction, to establish three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, and not conjectural or

---

[2] While the NJCA did not itself contract with DOL, its "whole membership" consists of the "99 privately operated Job Corps centers with enrolled students" that received notices from DOL "informing them that they would have to shut down their operations." ECF No. 12 ¶ 5.

hypothetical, (2) a causal connection between the injury and defendants' challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Membership-based associations like the NJCA can establish standing in one of two ways: they can assert "organizational standing" to sue on behalf of themselves, *see People for Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015), or "associational standing" to sue on behalf of their members, *see Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The NJCA cannot establish standing in either way.

With respect to organizational standing, the NJCA lacks standing because it is not a party to the contracts with DOL and thus, lacks a "legally protected interest" in their termination and suffers no cognizable injury-in-fact. *TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, No. 00 Civ. 5189 (RCC), 2006 WL 2463537, at *3 (S.D.N.Y. Aug. 23, 2006); *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 193 (2d Cir. 2023) (holding that as non-party to the contract between student and university, parent who paid tuition lacks standing to bring a breach of contract claim). Nor is NJCA an intended beneficiary of those contracts. *See Cauff, Lippman & Co. v. Apogee Fin. Group, Inc.*, 807 F. Supp. 1007, 1020 (S.D.N.Y. 1992) ("A person who is not a party to the contract may bring an action for breach of contract if she or he is an intended beneficiary, and not merely an incidental beneficiary of the contract."); *see also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005) (holding that a plaintiff, a non-party to the contract at issue, failed to establish standing to sue to enforce the contract because he was not "an intended third-party beneficiary of the rescinded agreement"); *Napoli-Bosse v. Gen. Motors, LLC*, No. 22-1861-cv, 2023 WL 7485796, at *2 (2d Cir. Nov. 13, 2023).

As for associational standing, an organization must show that it has a member who would have standing to sue in his or her own right; that the interests the organization seeks to protect are germane to its purpose; and that neither the claim asserted nor the relief requested requires the participation of the individual member in the lawsuit. *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013); *Hunt*, 432 U.S. at 343. As explained, the contractors themselves (which are already parties) cannot bring claims for termination of their agreements in this Court. Moreover, claims seeking monetary relief typically are not appropriate for organizational standing, because "damages claims are not common to the entire membership, nor shared by all in equal degree, and consequently there is simply no way the extent of the harm to [an organization's] members can be determined without individualized proof." *Air Transp. Ass'n of Am. v. Reno*, 80 F.3d 477, 483–84 (D.C. Cir. 1996) (citation omitted). "If such proof is required to resolve a claim—whether monetary or not—the member-participation prong is not satisfied." *Travelers United, Inc. v. Hyatt Hotels Corp.*, No. 23-2776, 2025 WL 27162 at *12 (D.D.C. Jan. 3, 2025).

Similarly, because Plaintiff Rivera is not a party to the contract between DOL and the operator of the Job Corps center where she is enrolled, and has not pointed to anything in that agreement demonstrating that the contracting parties intended to confer a benefit on her,[3] she lacks standing to bring a claim based on the termination of that agreement. *Cf. Sardarian v. Fed. Emergency Mgmt. Agency*, No. 3:19-CV-00910 (OAW), 2022 WL 4080325, at *1–2 (D. Conn. Apr. 1, 2022) (dismissed the suit for lack of standing where the plaintiff town resident did not have

---

[3] In order to establish the "exceptional privilege" of "third party beneficiary status" of a contract with the United States, Plaintiff Rivera would need to "prove that the contract not only reflects the express or implied intention to benefit [her], but that it reflects an intention to benefit [her] directly." *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1361 (Fed. Cir. 2016) (internal quotation marks omitted). "Third-party beneficiary status is not established merely because [a] contract would benefit [a party]." *Id.* (internal quotation marks omitted)).

a "legally protected interest" because agency awarded "the grant in question" to the state and municipality, not individual residents, and plaintiff was thus not the recipient of the grant "for purposes of establishing jurisdiction").[4]

## II.    Plaintiffs Do Not Demonstrate a Likelihood of Success on the Merits

### A.    Plaintiffs Cannot Establish that DOL Acted Illegally or *Ultra Vires*, or Violated the Separation of Powers

Even if this Court had jurisdiction over Plaintiffs' claims, Plaintiffs could not succeed in establishing that the DOL's decision is illegal, *ultra vires*, or violates the constitutional separation of powers between the Executive and Legislative Branches. Plaintiffs' arguments in this regard all depend on a mischaracterization of the actions taken by DOL to date as "clos[ing]" all of the privately operated Job Corps centers, Compl. ¶ 29, and more broadly as "unilateral[ly] eliminat[ing]" the entire Job Corps program, *id.* ¶ 26. But DOL has not done either of these things as of the date of the complaint, or the date of this filing.

While DOL's actions to date have undoubtedly curtailed the Job Corps program, they have not "eliminat[ed]" it entirely—24 USDA-run centers continue to operate. *See* McGee Decl. Ex. 4 at Q11; *accord* ECF No. 6 ("PI Mem.") at 4. Contrary to Plaintiffs' argument (PI Mem. at 8), DOL has thus not violated the statutory command that "there shall be within the Department of Labor a

---

[4] Even if the Court concluded that NJCA and Rivera have Article III standing, they lack prudential standing as non-parties to the contract because any rights against the Government belong to the contracting parties. *See Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (collecting cases)). The lack of prudential standing here is consistent with the Tucker Act's denial of standing to a party not in privity with the government. "A plaintiff must be in privity with the United States to have standing to sue the sovereign on a contract claim." *Sullivan v. United States*, 625 F.3d 1378, 1379-80 (Fed. Cir. 2010). "Not only is privity a fundamental requirement of contract law, but it is particularly important in cases involving government contracts because the government consents to be sued only by those with whom it has privity of contract." *Id.* (internal quotation marks omitted).

'Job Corps.'" 29 U.S.C. § 3193. One of the types of Job Corps centers that Congress has authorized are the USDA-run Civilian Conservation Centers, *id.* § 3197(d), which remain in operation.[5] While the White House's proposed budget for fiscal year 2026 would indeed eliminate the Job Corps program entirely, *see* PI Mem. at 5 & n.29, that would depend on its enactment by Congress, which would itself provide legislative authorization for the program's termination. But the termination of contracts for the operation of some, but not all, of the Job Corps centers is not an illegal elimination of the program.

Nor, contrary to Plaintiffs' argument (PI Mem. at 9-10), did DOL skip the procedural steps required before "closure" of Job Corps centers, which include providing public notice and comment and notifying Members of Congress, 29 U.S.C. § 3209(j), and considering certain agency-promulgated criteria, *id.* § 3211(c). Terminating or not renewing DOL's agreements with the private contractors operating Job Corps centers is not the same as "clos[ing]" the centers. For example, in November 2015, DOL terminated the contract of a Job Corps contractor that operated a center in Florida, putting the center in "inactive status," after a violent crime near the campus. *See* McGee Decl. ¶ 11. But DOL did not formally close the center until two years later, before which it provided public notice of the proposed closure. *Id.* ¶ 11 & Exs. 5-6. And in September 2017, DOL stopped contract work at Job Corps facilities in Florida and Puerto Rico that had suffered hurricane-related damage and went into "inactive status" thereafter. *Id.* ¶¶ 12-13. But DOL did not formally close of the centers until more than a year later. *Id.* ¶ 14 & Exs. 7-8. Further, in January 2025, in response to the Job Corps' budget issues, DOL terminated one operator's contract and did not extend another at Job Corps facilities in Kentucky and Maryland, but has not

---

[5] Plaintiffs correctly note that, after a previous attempt to shut down the USDA-run centers, Congress enacted an appropriations rider preventing this. PI Mem. at 4 & n.17.

formally closed either facility. *Id.* ¶ 15 & Exs. 9-10. DOL has thus long differentiated between terminations or stop-work orders issued under a Job Corps contractor's contract and the formal closure of a center—only the latter of which requires statutory notice—even if the contract termination or stop-work order results in the cessation of program activity at the center. *See id.* ¶ 10; *see also* Matz Decl. ¶¶ 15-16. Similarly here, DOL has terminated the contractors' contracts but has not to date formally closed the centers, which would trigger the notice requirement under the statute.

Plaintiffs' argument that DOL's actions violate the Impoundment Control Act ("ICA"), 2 U.S.C. § 681 *et seq.*, *see* Compl. ¶ 53, fares no better. Under the ICA, appropriated funds "shall be made available for obligation" unless the President transmits a special message to Congress and Congress rescinds the appropriation. 2 U.S.C. § 683(b). But the ICA enforces Congress's power over the purse in relation to the Executive. *See Dabney v. Reagan*, 542 F. Supp. 756, 760 (S.D.N.Y. 1982). It provides for enforcement by the Comptroller General (an official in the Legislative Branch), not for private enforcement. Thus, that statute is generally not enforceable through an APA suit. *See Gen. Land Off. v. Biden*, 722 F. Supp. 3d 710, 734-35 (S.D. Tex. 2024); *Pub. Citizen v. Stockman*, 528 F. Supp. 824, 830 n.1 (D.D.C. 1981); *cf. Trump v. Sierra Club*, 140 S. Ct. 1 (2019). *But see New York v. Trump*, No. 25-CV-39-JJM-PAS, 2025 WL 715621, at *9 n.13 (D.R.I. Mar. 6, 2025).

Even if Plaintiffs could seek to enforce the ICA in this suit, they still could not obtain the broad relief they seek here. At most, Plaintiffs could seek to establish that DOL's decision to terminate all of its contracts with private Job Corps center operators constituted a deferral of budget authority for which the requisite "special message" was not communicated to Congress. *See* 2 U.S.C. § 684. In that scenario, the remedy would be a directive to communicate the special

message—not a broad injunction interfering with DOL's discretion to manage its contractual relationships.

Therefore, DOL did not violate any law in terminating or not renewing the contracts at issue. Plaintiffs' argument that DOL's action must be set aside as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," PI Mem. at 8 (quoting 5 U.S.C. § 706(2)(C)), thus has no likelihood of success.

Plaintiffs' arguments that DOL's actions were *ultra vires* or violated the separation of powers fail for substantially the same reasons.[6] As explained, DOL acted within its statutory authority in terminating the private Job Corps operators' contracts. Plaintiffs purport to bring a non-APA, common law *ultra vires* claim that DOL acted "beyond the limitations set by federal statute." Compl. ¶ 61 (internal quotation marks omitted). Even assuming the common-law *ultra vires* doctrine still exists in suits against the federal government, *but see Apter v. Dep't of Health & Human Servs.*, 80 F.4th 579, 593 (5th Cir. 2023) ("[U]nder our precedent, Congress apparently 'did away with the *ultra vires* doctrine and other fictions surrounding sovereign immunity' when it amended the APA in 1976) (quoting *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985)), Plaintiffs' non-APA *ultra vires* arguments mirror their APA arguments that DOL's actions "exceed their legal authority," PI Mem. at 11. Those arguments fail for the reasons discussed above.

Moreover, in those courts that still recognize non-APA *ultra vires* claims, such "claims are confined to extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court." *Fed. Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 764 (D.C. Cir.

---

[6] Plaintiffs highlight the weakness of those arguments by devoting a mere two sentences to one of them (*ultra vires*) and no discussion of the other (separation of powers) in their brief. *See* PI Mem. at 11.

2022) (cleaned up) ("Only error that is patently a misconstruction of the [statute], that disregards a specific and unambiguous statutory directive, or that violates some specific command of a statute will support relief." (cleaned up)). Plaintiffs allege no such error—nor could they given the nature of DOL's action, which as discussed above, is the termination of contracts it had the right to terminate.

Plaintiffs' argument that DOL's actions contravene the separation of powers between the Executive and Legislative Branches also lacks merit. Compl. ¶¶ 66-69. DOL's decision to terminate the Job Corps contracts with private contractors did not violate any statute. And any purported statutory violation would not give rise to a constitutional claim about the separation of powers. The Supreme Court has explained that permitting a party to assert a separation-of-powers claim like Plaintiffs' would "eviscerat[e]" the well-established "distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462, 474 (1994). The Court has thus rejected the proposition "that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. The same can be said for the DOL in this case; even if its actions did not conform with some statutory provision, they do not disrupt the constitutional separation of powers.

### B.  Plaintiffs Cannot Establish that DOL Acted Arbitrarily and Capriciously

Plaintiffs are likewise unlikely to succeed on their claim that DOL's decisions are arbitrary and capricious. Compl. ¶¶ 55-59. "Judicial review under [the arbitrary and capricious] standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "Agency action is 'arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Magellan Tech., Inc. v. FDA*, 70 F.4th 622, 628 (2d Cir. 2023) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)), *cert. denied*, No. 23-799, 2025 WL 1151226 (U.S. Apr. 21, 2025). "Under the arbitrary-and-capricious standard, judicial review of agency action is necessarily narrow. A reviewing court may not itself weigh the evidence or substitute its judgment for that of the agency." *Id.* at 628-29 (internal quotation marks omitted). Rather, the Court must ensure "that the agency has acted within a zone of reasonableness." *Prometheus Radio*, 592 U.S. at 423.

Plaintiffs' fundamental challenge is to DOL's decision to terminate Job Corps center operations contracts and pause operations at those centers. DOL considered the relevant factors and made a reasoned decision, based on the Job Corps program's financial difficulties and related financial metrics, the poor enrollee outcomes, and the high number of serious incidents at Job Corps facilities. *See* McGee Decl. Ex. 4 at Q9. The Job Corps Transparency Report showed that the program had low graduation rates, and high costs per enrollee and even higher costs per graduate—but that Job Corps participants earned relatively low average wages after separating from the program. McGee Decl. ¶ 7 & Exs. 1-2. In explaining the agency's action, the Secretary concluded that "the program is no longer achieving the intended outcomes that students deserve" based on the agency's "in-depth fiscal analysis" and "a startling number of serious incident reports." *Id*. Ex. 3.

Specifically, in announcing the decision to terminate the contracts and pause program operations, DOL noted that in program year 2024, the Job Corps program operated at a $140 million deficit, which necessitated "a pause in center operations to complete the program year." *Id.*; *see also* McGee Decl. ¶ 15. DOL explained that this deficit was projected to grow to $213

million in program year 2025. *See id.* Ex. 3. Moreover, the announcement noted that there had been almost 15,000 "serious incident reports" in Job Corps centers in program year 2023— including sexual assaults, acts of violence, drug use, and breaches of safety or security—and highlighted the Job Corps program's low graduation rates. *Id.*

DOL's decision to pause Job Corps center operations at privately contracted centers and terminate or not renew the operators' contracts was thus based on a consideration of relevant factors—the financial condition of the program, the per-student cost and student outcomes, and the number of serious incidents that occurred in operating the program. These are the types of factors that agencies consider in evaluating and making decisions about program operations, and to which courts must defer. *See Window Covering Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 82 F.4th 1273, 1288 (D.C. Cir. 2023) ("[C]ost-benefit analyses epitomize the types of decisions that are most appropriately entrusted to the expertise of an agency." (internal quotation marks omitted)); *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 300 (S.D.N.Y. 2020) ("A court must review an agency's cost/benefit analysis deferentially." (internal quotation marks omitted)).

DOL's decision to terminate the contracts are thus not arbitrary and capricious in that the agency reasonably considered appropriate factors in making its decision.

## III. Plaintiffs Have Not Shown Irreparable Harm

Plaintiffs have also failed to show irreparable harm. To establish irreparable harm, a plaintiff must show an "injury that is neither remote nor speculative, but actual and imminent," and that "cannot be remedied by an award of monetary damages." *New York v. U.S. Dep't of Homeland Security*, 969 F.3d 42, 86 (2d Cir. 2020) (internal quotation marks and citation omitted). Such injuries "cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (citation omitted). Accordingly, "[o]nly when the threatened harm would impair the court's ability to grant an effective remedy is

there really a need for preliminary relief." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999) (internal quotation marks omitted).

As the declarations submitted by the Contractor Plaintiffs make clear, the injuries they claim they will suffer are simply the financial consequences of the termination of their contracts. *See, e.g.*, ECF No. 10 ¶ 10; ECF No. 11 ¶¶ 9-12; ECF No. 13 ¶¶ 12, 20;[7] ECF No. 14 ¶¶ 10, 17-18; ECF No. 15 ¶ 9, 11. Such monetary loss is insufficient to establish irreparable harm "unless the movant provides evidence of damage that cannot be rectified by financial compensation." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991); *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("[E]conomic loss does not, in and of itself, constitute irreparable harm.").

That is a high standard that has not been met here. "[G]eneralized and conclusory statements concerning the termination of employees and the ultimate demise of [a] business" are generally "insufficient as a matter of law to demonstrate the requisite harm for injunctive relief" particularly given the fact that "[w]hen dealing with contracts, damages are the rule, not the exception." *Safe Step Walk-In Tub Co. v. CKH Indus., Inc.*, No. L 5-CV-07543 (NSR), 2015 WL 6504284, at *2 (S.D.N.Y. Oct. 26, 2015); *see also USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 491 (S.D.N.Y. 1989) ("[m]ere disruptions in business" do not constitute irreparable harm). To the extent that the Contractor Plaintiffs are entitled to any termination costs or other damages as a result of the contract terminations, they can seek such relief in Court of Federal Claims. *See* Point I.A *supra; Moore v. Consolidated Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510

---

[7] Plaintiff Adams and Associates, Inc., also alleges that its "relationship and reputation within local communities . . . have been damaged." ECF No. 13 ¶19. However, "conclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm." *Atari Interactive, Inc. v. Printify, Inc.*, 714 F. Supp. 3d 225, 238 (S.D.N.Y. 2024) (cleaned up).

(2d Cir. 2005) ("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.").

The NJCA, for its part, conclusorily asserts that "[t]he shutdown of [Job Corps] campuses" that are operated by the organization's members "will result in irreparable harm to NJCA" because it is "virtually exclusively funded by the membership dues of its constituents." ECF No. 12 ¶ 2. Such speculative and conclusory statements are insufficient to warrant the "extraordinary remedy" of a preliminary injunction. *Winter*, 555 U.S. at 22.

Finally, Plaintiff Rivera, fails to "demonstrate that absent a preliminary injunction [she] will suffer an injury that is neither remote nor speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted); *Borey*, 934 F.2d at 34 ("[A] mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction."). While she alleges potential harms that will occur if she has to leave the center, *see* ECF No. 8 ¶ 13, her allegations disregard the fact that DOL has made it clear that the agency's "paramount consideration is the safety and well-being of students" and that "there is no hard deadline for transferring student to their home of record" before June 20, 2025. ECF No. 7-6 at 2. Moreover, while she posits that even if Plaintiffs were successful in this action, she "do[es]n't know if [she]'d be able to come back to Albany" and that she would "have to restart," ECF No. 8 ¶ 14, such speculation is insufficient to justify a preliminary injunction. This is particularly the case when DOL has made clear that it is "collaborating with state and local workforce partners to assist current students in advancing their training and connecting them with education and employment opportunities." McGee Decl. ¶ 9 & Ex. 3.

## IV.    A Preliminary Injunction Would Not Serve the Public Interest

The final two factors, the balance of equities and the public interest, also weigh in DOL's favor. *See Nken v. Holder*, 556 U.S. 418, 435-36 (2009) (final two factors merge when the

Government is the party opposing a motion for preliminary injunctive relief). In considering these factors, the Court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, as well as the public consequences in employing the extraordinary remedy of injunction." *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 178 (S.D.N.Y. 2022) (internal quotation marks omitted).

As an initial matter, because Plaintiffs cannot establish the first two factors necessary to obtain a preliminary injunction, "it is clear they cannot make the corresponding strong showings [on the second two factors] required to tip the balance in their favor." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009). And the materials explaining DOL's decision make clear why the remaining factors weigh in the agency's favor as well. As explained in the Transparency Report, the Job Corps program has produced disappointing outcomes for participants—low graduation rates and post-graduation salaries, and a high number of student incidents—at a high taxpayer cost. *See* McGee Decl. Exs. 2-3. Moreover, the program is projected to run an even larger deficit in the coming program year than it did in the current year—which has already required the suspension of operations at certain centers and other cost-cutting steps. *See id.* ¶ 15. As a steward of the public fisc, DOL must consider whether the expenditure of federal funds accords with government priorities and produces good value and outcomes for program participants and others. Here, DOL has determined that continuing to fund the contracts at issue is not in the public's interest. As the Secretary has explained: "Job Corps was created to help young adults build a pathway to a better life through education, training, and community. . . . However, a startling number of serious incident reports and our in-depth fiscal analysis reveal the program is no longer achieving the intended outcomes that students deserve." *Id.* Ex. 3.

Weighed against the agency's determination are the Plaintiffs' claims that almost exclusively sound in contract—and are thus remediable with money damages, to the extent they have merit. And any harm to Job Corps program participants such as Plaintiff Rivera will be minimized through the efforts DOL is undertaking to assist students in the transition. *See* McGee Decl. ¶ 9. There is thus no justification for "employing the extraordinary remedy of injunction." *Bionpharma*, 582 F. Supp. 3d at 178.

## V.    Any Injunction Ordered in This Case Should Be Narrowly Tailored and Require Plaintiffs to Post a Bond

Finally, even if the Court were to conclude that injunctive relief were appropriate in this case, such relief should be narrowly tailored to that necessary to afford relief only to the named plaintiffs. Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). Courts thus must narrowly tailor any injunctive relief to the plaintiffs themselves. *See, e.g.*, *Maryland v. Corp. for Nat'l & Community Serv.*, No. CV DLB-25-1363, 2025 WL 1585051, at *38 (D. Md. June 5, 2025) ("The scope of the injunction is narrowly tailored to restore the AmeriCorps-funded programs in the plaintiff states . . . ."); *Barton v. U.S. Dep't of Labor*, 757 F. Supp. 3d 766, 793 (E.D. Ky. 2024) ("Although this Court recognizes the incongruity in affording relief only to the parties to the suit, issuing preliminary relief any broader than to the parties currently before it (or who may be joined subsequently) is unnecessary and runs afoul of our federal system."); *cf. New York*, 969 F.3d at 87 ("The issuance of nationwide injunctions has been the subject of increasing scrutiny in recent years . . . .").

Moreover, in accordance with Federal Rule of Civil Procedure 65(c) and the President's March 11, 2025, memorandum titled "Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)," if the Court enters a preliminary injunction, DOL respectfully requests that the

Court require Plaintiffs to post a bond in an appropriate amount. *See* McGee Decl. ¶ 16 (noting that DOL spends around $3 million per day to fund the 99 contractor-operated Job Corps centers); Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); http://www.whitehouse.gov/presidential-actions/2025/03/ensuring-the-enforcement-of-federal-rule-of-civil-procedure-65c/. DOL further requests that, if a preliminary injunction is entered, the Court enter a stay of this action pending the disposition of any appeal authorized by the Solicitor General.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: June 10, 2025                              Respectfully submitted,

                                                  JAY CLAYTON
                                                  United States Attorney

                                                  By: */s/ Jean-David Barnea*_____
                                                  JEAN-DAVID BARNEA
                                                  DOMINIKA TARCZYNSKA
                                                  Assistant United States Attorneys
                                                  86 Chambers Street, 3rd Floor
                                                  New York, NY 10007
                                                  Telephone: (212) 637-2679/2748
                                                  Email: Jean-David.Barnea@usdoj.gov
                                                        Dominika.Tarczynska@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 8606 words.

New York, New York
June 10, 2025

      ___s/Jean-David Barnea_____
      JEAN-DAVID BARNEA
      Assistant United States Attorney