UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL JOB CORPS ASSOCIATION, JOCELYN RIVERA, ADAMS AND ASSOCIATES, INC., ALTERNATE PERSPECTIVES, INC., EDUCATION & TRAINING RESOURCES, LLC, STRATEGIX MANAGEMENT, LLC, TRANSPORTATION COMMUNICATIONS UNION/IAM,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEPARTMENT OF LABOR, LORI CHAVEZ-DEREMER, in her official capacity as Secretary, Department of Labor,<br><br>*Defendants*. | Civil Case No. 1:25-cv-04641-ALC |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION**

June 12, 2025

1

## TABLE OF AUTHORITIES

**CASES**

*AIDS Vaccine Advoc. Coal. v. United States Dep't of State*,
  No. 25 Civ. 00400, 2025 WL 752378 (D.D.C. Mar. 10, 2025) ........................................ 2, 6

*Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*,
  498 U.S. 517 (1991) ............................................................................................................ 4

*Apter v. HHS*,
  80 F.4th 579 (5th Cir. 2023) ................................................................................................ 6

*Atterbury v. U.S. Marshals Serv.*,
  805 F.3d 398 (2d Cir. 2015) ................................................................................................ 2

*Barton v. U.S. Dep't of Labor*,
  757 F.Supp.3d 766 (E.D. Ky. 2024) .................................................................................. 10

*Bass v. Richardson*,
  338 F.Supp. 478 (S.D.N.Y. 1971) ..................................................................................... 10

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) .......................................................................................................... 10

*California v. U.S. Dep't of Educ.*,
  132 F.4th 92 (1st Cir. 2025) ................................................................................................ 1

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ............................................................................................................ 7

*Climate United Fund v. Citibank, N.A.*,
  No. 25 Civ. 00698, 2025 WL 1131412 (D.D.C. Apr. 16, 2025) ......................................... 2

*Department of Education v. California*,
  145 S.Ct. 966 (2025) ........................................................................................................... 3

*DHS v. Regents of Univ. of Cal.*,
  591 U.S. 1 (2020) ............................................................................................................ 7, 8

*Florida v. Dep't of Health & Hum. Servs.*,
  19 F.4th 1271 (11th Cir. 2021) ......................................................................................... 10

*Geyen v. Marsh*,
  775 F.2d 1303 (5th Cir. 1985) ............................................................................................ 6

*Ingersoll-Rand Co. v. United States*,
    780 F.2d 74 (D.C. Cir. 1985) ............................................................................................... 1, 2

*League of Women Voters of the U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ....................................................................................................... 8

*Maine v. U.S. Dep't of Agric.*,
    No. 25 Civ. 00131, 2025 WL 1088946 (D. Me. Apr. 11, 2025) ............................................. 3

*Maryland v. Corp. for Nat'l & Comm. Serv.*,
    No. 25 Civ. 1363, 2025 WL 1585051 (D. Md. June 5, 2025) .............................................. 10

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982) ............................................................................................... 2, 3

*Metro. Transp. Auth. v. Duffy*,
    No. 25 Civ. 01413, 2025 WL 1513369 (S.D.N.Y. May 28, 2025) ......................................... 1

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...................................................................................................................... 7

*Nat'l Ctr. for Mfg. v. United States*,
    114 F.3d 196 (Fed. Cir. 1997) ............................................................................................... 2, 3

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*,
    145 F.3d 1399 (D.C. Cir. 1998) ............................................................................................... 10

*New York v. Trump*,
    No. 25 Civ. 39, 2025 WL 715621 (D.R.I. Mar. 6, 2025) ....................................................... 6

*New York v. Trump*,
    No. 25 Civ. 39, 2025 WL 1098966 (D.R.I. Apr. 14, 2025) .................................................... 3

*Pacito v. Trump*,
    No. 25 Civ. 255, 2025 WL 893530 (W.D. Wash. Mar. 24, 2025) ....................... 3, 4, 6, 7, 10

*Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    337 F.Supp.3d 308 (S.D.N.Y. 2018) ....................................................................................... 9

*Rhode Island v. Trump*,
    No. 25 Civ. 128, 2025 WL 1303868 (D.R.I. May 6, 2025) ................................................... 7

*S. Educ. Found. v. U.S. Dep't of Educ.*,
    No. 25 Civ. 01079, 2025 WL 1453047 (D.D.C. May 21, 2025) ........................................... 1

*S.F. Unified Sch. Dist. v. AmeriCorps*,
  No. 25 Civ. 02425, 2025 WL 1180729 (N.D. Cal. Apr. 23, 2025) .................................... 2, 3

*Salazar v. King*,
  822 F.3d 61 (2d Cir. 2016) ................................................................................................. 6

*Spectrum Leasing Corp. v. United States*,
  764 F.2d 891 (D.C. Cir. 1985) ........................................................................................... 2

*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ........................................................................................... 9

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agriculture*,
  No. 25 Civ. 97, 2025 WL 1116157 (D.R.I. Apr. 15, 2025) ............................................... 10

**STATUTES**

5 U.S.C. § 701(a)(1) ................................................................................................................ 6

5 U.S.C. § 706(2)(A) ............................................................................................................. 10

5 U.S.C. § 706(C) .................................................................................................................. 10

29 U.S.C. § 3191(1) ................................................................................................................. 5

29 U.S.C. § 3193 ..................................................................................................................... 6

29 U.S.C. § 3197(d)(1) ............................................................................................................ 5

Plaintiffs are entitled to preliminary relief. Defendants strain to persuade the Court that this is a contract case, that their elimination of the Job Corps program was rational, and that Plaintiffs' injuries are speculative. But the facts, plain as day, do not fit their arguments. Accordingly, Plaintiffs request that the Court enjoin Defendants' unlawful elimination of the Job Corps program.

I.  **This Court Has Jurisdiction Over Plaintiffs' Claims**

A suit against the Government falls within the exclusive jurisdiction of the Court of Federal Claims, pursuant to the Contract Disputes Act ("CDA"), only if it is "at its essence a contract action." *Metro. Transp. Auth. v. Duffy*, No. 25 Civ. 01413, 2025 WL 1513369, at *24 (S.D.N.Y. May 28, 2025) (citation omitted). That depends "both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought." *Id*. Here, Plaintiffs' claims are founded on statute, not contract. Two of the plaintiffs *do not even have contracts with the Government*. And Plaintiffs seek equitable relief beyond the Court of Federal Claims' purview.

A.  **Plaintiffs' Claims are Not Contractual**

Plaintiffs seek to remedy the injuries Defendants caused by violating their statutory, regulatory, and constitutional obligations. *See* ECF No. 1 ("Compl.") ¶¶ 50–53; ECF No. 6 ("MOL") at 8–11. These claims do not (and, for Plaintiffs NJCA and Rivera, could not) turn on an interpretation of any provision of the contracts between Plaintiffs and Defendants.[1] Courts have repeatedly held that such claims are not subject to the CDA. *See, e.g.*, *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 97 (1st Cir. 2025) ("The [Plaintiffs'] claims are, at their core, assertions that the [agency] acted in violation of federal law -- not its contracts."); *S. Educ. Found. v. U.S. Dep't of Educ.*, No. 25 Civ. 01079, 2025 WL 1453047, at *7 (D.D.C. May 21, 2025) (holding district

---

[1] For this reason, Defendants' suggestion that this case implicates the "unique expertise" of the Court of Federal Claims in government contracting makes no sense. *See* ECF No. 29 ("'Opp.") at 10 (quoting *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985)).

court had jurisdiction over grant termination dispute that involved "statutes and regulations governing [the plaintiff's] grant award," rather than "the terms of the grant agreement[s]" themselves); *Climate United Fund v. Citibank, N.A.*, No. 25 Civ. 00698, 2025 WL 1131412, at *9-10 (D.D.C. Apr. 16, 2025) (similar); *S.F. Unified Sch. Dist. v. AmeriCorps*, No. 25 Civ. 02425, 2025 WL 1180729, at *7-9 (N.D. Cal. Apr. 23, 2025) (similar); *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 25 Civ. 00400, 2025 WL 752378, at *8-9 (D.D.C. Mar. 10, 2025) (similar).

The principal case that Defendants rely on only underscores that the CDA does not apply here. In *Ingersoll-Rand*, *see* Opp. at 10-11, a contractor challenged the Air Force's decision to cancel a procurement contract *and rebid it out to its competitors*, allegedly in violation of the Federal Acquisition Regulation ("FAR"). *See* 780 F.2d at 784. The court determined that the validity of the Government's action turned on the interpretation of the contract's termination-for-convenience provision and it was therefore "possible to conceive of [the] dispute as entirely contained within the terms of the contract." *Id.* at 78. Here, Plaintiffs are not challenging individual terminations and rebids of their contracts.[2] To the contrary, they are challenging the unlawful elimination of access to and the operation of the Job Corps program mandated by Congress.[3]

Because Plaintiffs' claims are "not based on rights derived from a contract with the United States, the first prong of the . . . test is determinative." *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 408 (2d Cir. 2015). The second prong—which concerns the relief that Plaintiffs are seeking—only confirms the Court's jurisdiction. *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 970 (D.C. Cir. 1982). Plaintiffs are not seeking contractual relief, like a "monetary judgment," *Nat'l Ctr. for Mfg.*

---

[2] Likewise, *Spectrum Leasing Corp. v. United States*, 764 F.2d 891 (D.C. Cir. 1985) is plainly distinguishable. That case involved a situation where the Government invoked a contractual liquidated damages clause to stop payments after the plaintiff struggled to meet its contract requirements, and the plaintiff then sought to end-run around the clause by claiming that the Government's withholding of payments violated the Debt Collection Act. *Id.* at 892, 894

[3] *See* Matz Decl. ¶ 12 (stating she received an email from DOL leadership ordering immediate termination of all 99 contractor-operated centers with shutdown activities to be completed in a month).

*Scis. v. United States*, 114 F.3d 196, 201 (Fed. Cir. 1997), but to halt Defendants' unlawful elimination of Job Corps. Compl. at 19–20; MOL at 13–16. "The Tucker Act does not impliedly forbid such forward-looking equitable relief." *Pacito v. Trump*, No. 25 Civ. 255, 2025 WL 893530, at *5 (W.D. Wash. Mar. 24, 2025); *see also Nat'l Ctr. for Mfg. Scis.*, 114 F.3d at 201.

Defendants' assertion that Plaintiffs are "seeking the restoration of their contracts with the federal government," Opp. at 11, does not move the needle. While halting Defendants' unlawful elimination of the Job Corps program requires vacatur of the contract terminations, that the equitable relief would "likely result in monetary payments," is irrelevant to jurisdiction because it is "a mere by-product of this court's primary function of reviewing the [DOL's] interpretation of federal law." *Maine v. U.S. Dep't of Agric.*, No. 25 Civ. 00131, 2025 WL 1088946, at *19 (D. Me. Apr. 11, 2025) (cleaned up); *see also Megapulse,* 672 F.2d at 971. And vacatur of the terminations *alone* would not suffice to remedy Plaintiffs' injuries: Defendants have stopped processing the statutorily required background checks on Job Corps students, thus choking off new enrollment in the program. Halting Defendants' unlawful elimination of the program will require restarting those background checks.

The Supreme Court's stay order in *Department of Education v. California*, 145 S. Ct. 966 (2025), also does not move the needle. That order—issued "with barebones briefing, no argument, and scarce time for reflection," *id.* at 969 (Kagan, J., dissenting)—concerned a case (unlike this one) where "the terms and conditions of each individual grant award [were] at issue," *id.* at 96–97. And in the months since the order was issued, several courts have rejected the expansive reading of the order that Defendants advance here. *See, e.g.*, *New York v. Trump,* No. 25 Civ. 00039, 2025 WL 1098966, at *2-3 (D.R.I. Apr. 14, 2025); *AmeriCorps,* 2025 WL 1180729, at *7 (N.D. Cal. Apr. 23, 2025); *Maine*, 2025 WL 1088946, at *19 n.8.

3

### B. Plaintiffs NJCA and Rivera Have Standing

Defendants also argue that this Court lacks jurisdiction over NJCA and Rivera's claims because they are "*not* parties to contracts with DOL" and so lack standing. Opp. at 12 (emphasis added). This argument misses the mark entirely. It is black letter law that respondents have standing to sue under the APA when "they have suffered a legal wrong because of the challenged agency action, or are adversely affected or 'aggrieved by agency action within the meaning of a relevant statute.'" *Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523 (1991); *see also Pacito* 2025 WL 893530, at *55. And Plaintiffs NJCA and Rivera have suffered real, redressable injury as a result of DOL's unlawful actions. Compl. ¶¶ 40-47; MOL at 13-15; Rivera Decl. ¶¶ 2-3; Hay-Jones Decl. ¶¶ 1-2; Hay-Jones Supp. Decl. ¶¶ 12-14.

## II. Plaintiffs Are Likely to Succeed on the Merits

### A. Defendants' Actions Are Contrary to Law

Defendants' abrupt elimination of all privately operated Job Corps centers is contrary to law in violation of the APA. MOL at 8-11. For similar reasons, Defendants' actions are *ultra vires* and violate the Constitutional separation of powers.

Defendants' arguments to the contrary rest on illusory distinctions that have no basis in fact or law. *First*, while conceding that a wholesale elimination of the Job Corps program is illegal, Defendants assert they have only "curtailed" the program, since the U.S. Department of Agriculture ("USDA") will continue to operate 24 centers. Opp. at 15. That DOL has only been *mostly* successful to date in its plan to end Job Corps does not prove that it has not violated the statutory command that the program exist. Indeed, as Defendants note, "after a previous attempt to shut down the USDA-run centers, Congress enacted an appropriations rider preventing" DOL from issuing stop work orders at the USDA-run centers. Opp. at 16 n.5. And Defendants *have* stopped processing background checks at USDA-run centers (and refused to allow transfers to

these centers), thus halting new enrollment and effectively shutting them down at a slower pace. Defendants' assertion also contradicts the governing statute, which requires DOL to "maintain a *national* Job Corps." 29 U.S.C § 3191(1) (emphasis added). The program "*may* include" USDA-run centers "that are located primarily in rural areas," 29 U.S.C § 3197(d)(1) (emphasis added), but those centers alone, located in only 15 states (as opposed to 50), do not satisfy the statute.[4]

*Second*, Defendants assert that the statutory and regulatory requirements governing Job Corps center closures do not apply because they have not yet "formally closed the centers." Opp. at 17. This is nonsense. Defendants offer no textual support for this distinction, which would render the statutory notice provisions toothless. Instead, they point to a couple of historical examples where DOL had issued stop-work orders to Job Corps centers before publishing notice of their closure. *Id*. But the circumstances of those closures were radically different, and largely prompted by emergencies (like hurricanes) that required DOL to suspend operations before making final closure decisions.[5] *See* McGee Decl. ¶¶ 11-13.[6] Here, the die has been cast: Defendants do not (and could not plausibly) assert that they are considering any alternative to a wholesale elimination of the program.[7] The distinction between Defendants' actions and a "formal closure," Opp. at 17, is therefore entirely illusory.

---

[4] *See Job Corps Locations*, Job Corps, https://www.jobcorps.gov/explore?center_types%5B0%5D=CCC [https://web.archive.org/web/20250523125727/https://www.jobcorps.gov/explore?center_types%5B0%5D=CCC] (last visited June 12, 2025) (showing USDA CCC sites in fifteen states: Arkansas, Colorado, Kentucky, Missouri, Montana, North Carolina, Nebraska, Oregon, South Dakota, Tennessee, Utah, Virginia, Washington, Wisconsin, and West Virginia). Moreover, the Job Corps CCCs account for just 3,606 (11%) of the 33,959 total planned OBS slots listed in the Transparency Report.

[5] For example, DOL placed all three centers in Puerto Rico (Arecibo, Ramey, Barranquitas) on an inactive status following Hurricane, Maria, but ultimately decided to consolidate operations to two centers in Puerto Rico and close the Barranquitas center. See McGee Decl. ¶ 12.

[6] As for the two sole centers "paused" to address a budget deficit—further evidence of DOL's unlawful actions this year—DOL admits they still had caretaker services for the facility and gave students the option to transfer to a different center. McGee Decl. ¶ 15. DOL has made no such provisions here.

[7] *See* Ltr. from R. Vought (May 2, 2025), at https://www.whitehouse.gov/wp-content/uploads/2025/05/Fiscal-Year-2026-Discretionary-Budget-Request.pdf (proposing to eliminate Job Corps).

5

Defendants' argument that the Impoundment Control Act of 1974 ("ICA") cannot predicate an APA claim likewise fails. The APA is inapplicable only when another statute "preclude[s] judicial review." 5 U.S.C. § 701(a)(1). Defendants identify no part of the ICA that prevents such review. *See Salazar v. King*, 822 F.3d 61, 75 (2d Cir. 2016) (holding "*agency bears the heavy burden of overcoming the strong presumption* that Congress" precluded judicial review) (citation omitted) (emphasis added). And their view has been repeatedly rejected in recent federal district court decisions. *See New York v. Trump*, No. 25 Civ. 39, 2025 WL 715621, at *9 (D.R.I. Mar. 6, 2025); *AIDS Vaccine Advoc. Coal. v. United States Dep't of State*, No. 25 Civ. 00400, 2025 WL 752378, at *17 n.17 (D.D.C. Mar. 10, 2025).[8] Moreover, their assertion that any relief would necessarily be limited to requiring DOL to communicate the requisite special message to Congress about the impoundment is illogical and unsupported by any authority. *See AIDS Vaccine Advoc. Coal*, 2025 WL 752378, at *7 (ordering defendants to make available the full amount of funds that Congress appropriated for foreign assistance programs).

Finally, Defendants' assertion that Plaintiffs cannot bring *ultra vires* and separation of powers claims fares no better.[9] Defendants' abrupt, unjustifiable elimination of the Job Corps program constitutes "extreme agency error," Opp. at 18-19, and contravenes both Congress's mandate that there "shall be … a Job Corps" program and its appropriation of funding for the program. 29 U.S.C. § 3193. These violations are sufficient to ground a common law *ultra vires* claim. *See Pacito*, 2025 WL 655075, at *9, 17 (finding agency action to be *ultra vires* and contrary to law under the APA). And because the Constitution grants Congress the exclusive authority to

---

[8] Plaintiffs acknowledge that a couple of federal district courts have come out the other way. *See* Opp. at 17.

[9] Defendants' opposition questions whether common-law *ultra vires* claims are appropriate in suits against the government, relying on a Fifth Circuit case, see *Apter v. HHS*, 80 F.4th 579, 593 (5th Cir. 2023). But *Apter* does not even address this point. Instead, the court acknowledged that a 40-year-old case implied that Congress "did away with the *ultra vires* doctrine … when it amended the APA," *id*. (quoting *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985) (cleaned up), but it went on to observe that other Courts of Appeals have continued to recognize *ultra vires* claims and ultimately declined to consider whether an ultra vires claim could be raised independent of an APA action.

legislate and allocate federal funds, Defendants' actions also independently violate separation of powers principles. *See Rhode Island v. Trump,* No. 25 Civ. 128, 2025 WL 1303868, at *10-12, 15 (D.R.I. May 6, 2025) (finding agency action violated both APA and separation of powers).

### B. Defendants' Actions Are Arbitrary and Capricious

Defendants' elimination of the Job Corps program also violates the APA because it is arbitrary and capricious. The APA requires an agency to consider "the relevant factors," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), and to "offer a 'rational connection between the facts found and the choice it made,'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) (citation omitted). When an agency effectively rescinds its "longstanding" policies, in particular, one of the factors it must consider is any "serious reliance interests" it may have engendered. *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 30 (2020) (cleaned up). The agency must also consider alternatives to its policy change that are "within the ambit of the existing [policy]." *Id.* at 30. Defendants fail each of these requirements.

To start, the data that Defendants relied on is flawed. Defendants assert that their decision to shutter the Job Corps program was justified by the April 25, 2025 Job Corps Transparency Report. *See* Opp. at 24. This "Report" is an Excel spreadsheet devoid of any reasoned analysis.[10] Moreover, the data in the spreadsheet has significant problems: Among other things, it does not match the data in DOL's own systems, systematically inflates the program's costs, and understates enrollees' earnings after separation.[11] Similarly, Defendants' assertion that the decision was

---

[10] *See, e.g.*, *Pacito*, 2025 WL 893530 at *11 (stating that Agency Defendants' may change their "view of what is in the public interest," but "must supply a reasoned analysis").

[11] *See* Larson Supp. Decl. ¶¶ 10-12 (noting that the definitions in the Report appear to count non-respondents (a significant number of students) as having $0 in earnings; imply that students placed in college or the military (which does not disclose earnings) also have $0 in earnings; and that the annual wage for students getting a job late in a quarter are based on earnings for that quarter where they didn't work the whole time rather than wages going forward); Fox Supp. Decl. ¶ 6 (outlining discrepancies between the data in the transparency report and the data currently preserved in the DOL data systems for the same period); Wild Supp. Decl. ¶ 6 (same).

7

justified by "a $140 million deficit" in the Job Corps program that was "projected to grow to $213 million in program year 2025," Opp. at 4, 20-21, is misleading. DOL's Job Corps Administrator, John Hall, repeatedly confirmed that the PY 2024 deficit had already been addressed with prior measures, and also stated on a March 19, 2025 call that the $213 million deficit projection for PY 2025 had been reduced to just $63 million by annualizing the PY 2024 cost-saving measures. Hay-Jones Supp. Decl. ¶¶ 8-9; *see also* McGee Decl. ¶ 15.

Aside from the serious problems with the data Defendants relied on, the decision they reached bears no rational connection to that data. Most fundamentally, the decision to shut down 99 contract centers costing (according to the Transparency Report) $1.1 billion, due to a purported, projected $213 million deficit is irrational on its face. Likewise, evicting tens of thousands of young people the program serves—including thousands who have no place to go—is not a rational response to the program's purported underperformance or to any purported safety issues. Defendants do not even attempt to assert that they considered the substantial reliance interests engendered by this 60-year-old program, nor that they considered alternatives that fell "within the ambit of the existing policy." *Regents of Univ. of Cal.*, 591 U.S. at 30 (cleaned up).

**III.   The Equities Clearly Favor Preliminary Relief**

Plaintiffs will suffer imminent, irreparable injury absent preliminary relief. Defendants' arguments to the contrary are largely incomprehensible. For example, Defendants' *ipse dixit* that Plaintiff Rivera's injuries are speculative makes little sense given her declaration that she will be evicted from the Glenmont Job Corps center in a matter of days, with nowhere to go. *See* Rivera Decl. ¶¶ 13-14. Likewise, Plaintiff NJCA's injuries could not be more concrete: Ending the Job Corps program will obviously undermine NJCA's reason for existing. Hay-Jones Decl. ¶¶ 1-2; Hay-Jones Supp. Decl. ¶¶ 12-14. *See also League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (finding irreparable harm where "new obstacles unquestionably make it more

difficult for the [plaintiffs] to accomplish their primary mission"). And the other Plaintiffs have articulated multiple irreparable injuries due to Defendants' unlawful actions, including forced layoffs and permanent damage to their business and community relationships. *See* Maratea Decl. ¶¶ 10, 17-18; Larson Decl. ¶¶ 18-20; Fox Decl. ¶¶ 10-11; Wild Decl. ¶¶ 9-10; *see also* MOL 14-15 (collecting cases).[12]

Defendants' assertion that the public interest is not served by the continuation of the Job Corps program falls flat for the reasons outlined in Part II, *supra*. And this assertion is difficult to credit, given that last year, Defendant Chavez-DeRemer joined a letter lauding the program's "track record of providing effective career and technical education" and noting that "Job Corps increases participants' employment and wages and decreases their reliance on public benefits." Feldman Supp. Decl. Ex. B, Letter from Brett Guthrie et al. to Chairman Robert Aderholt & Ranking Member Rosa L. DeLauro 1 (May 1, 2024).[13] President Trump has likewise repeatedly lauded trade schools, including, in late May, advocating taking billions of dollars away from Harvard to make a "great," "badly needed" investment in trade schools. Feldman Decl. Ex. A. In any event, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018) (citation omitted).

## IV. Injunctive Relief Should Not Be Limited to Plaintiffs

The Court should reject Defendants' contention that an injunction should be limited to the named Plaintiffs. An injunction's scope is "dictated by the extent of the violation established, not

---

[12] Since Defendants' stop work orders "threaten[] the very existence of [Plaintiffs'] business[es]," the monetary injuries also "constitute irreparable harm." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).
[13] The letter also acknowledged that "nearly 80% of Job Corps graduates received a high-quality placement via employment, enlisting in the military or enrolling in higher education." Feldman Supp. Decl. Ex. B at 1.

9

by the geographical extent of the plaintiff class." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Here, a nationwide injunction is necessary to "protect similarly situated nonparties" and to "avoid the 'chaos and confusion' of a patchwork of injunctions." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1281-82 (11th Cir. 2021) (citation omitted).[14] Although Plaintiffs are just a few of the individuals and entities affected by Defendants' unlawful acts, "[n]onparties in exactly the same circumstances should not be forced to suffer the harms just because there was not enough time or resources for them to join the suit." *Woonasquatucket River Watershed Council v. U.S. Dep't of Agriculture*, No. 25 Civ. 97, 2025 WL 1116157 at *25 (D.R.I. Apr. 15, 2025). Moreover, the normal remedy for a successful APA challenge is to hold unlawful and set aside the rule for all who would have been subject to it. *See* 5 U.S.C. § 706(2)(A), (C); *see also Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998).

Finally, the Court should waive any bond requirement. *See, e.g.*, *Bass v. Richardson*, 338 F. Supp. 478, 491 (S.D.N.Y. 1971) (refusing to require a bond as a condition in similar cases to avoid denying litigants their right to judicial review for administrative actions); *Pacito,* 2025 WL 893530, at *11 (rejecting the government's request for a bond when granting a preliminary injunction where Congress has already appropriated the funds for the program at issue).

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for a preliminary injunction, halting Defendants' unlawful elimination of the Job Corps program.

---

[14] The cases Defendants cite are inapposite. Defendants cite to *Maryland v. Corp. for Nat'l & Comm. Serv.*, No. 25 Civ. 1363, 2025 WL 1585051 (D. Md. June 5, 2025), but the plaintiffs there did not ask for relief to non-parties, *see id.* at *38 ("[T]he States have not asked to so extend the relief . . . ."). Defendants' citation to *Barton v. U.S. Dep't of Labor*, 757 F. Supp.3d 766 (E.D. Ky. 2024), fares no better. *Barton* involved an agency rule making administrative changes to the requirements for employers who wanted to take advantage of a pre-existing visa program, and the Court found a nationwide injunction to be "unnecessary" and "not appropriate under the circumstances presented." *Id.* at 793-94. The case here—involving a challenge to the wholesale and abrupt termination of a program nation-wide—involves vastly different circumstances where piecemeal enforcement simply makes no sense.

| | |
|---|---|
| Dated: June 12, 2025<br>New York, NY | /s/ Maximilian L. Feldman<br>Maximilian L. Feldman<br>Disha Verma<br>HECKER FINK LLP<br>350 Fifth Avenue, 63rd Floor<br>New York, New York 10118<br>Tel.: (212) 763-0883<br>Fax: (212) 564-0883<br>mfeldman@heckerfink.com<br>dverma@heckerfink.com<br><br>Amy Jeffress (admitted *pro hac vice*)<br>Minahil Khan (admitted *pro hac vice*)<br>HECKER FINK LLP<br>1050 K Street NW, Suite 1040<br>Washington, D.C. 20001<br>Tel.: (212) 763-0883<br>Fax: (212) 564-0883<br>ajeffress@heckerfink.com<br>mkhan@heckerfink.com<br><br>*Counsel for Plaintiff National Job Corps Association*<br><br>/s/ Benjamin D. White<br>Benjamin D. White, Esq.<br>Michael L. Bloch, Esq.<br>Cristina Alvarez<br>Arielle Gerber, Esq.**<br>BLOCH & WHITE LLP<br>152 West 57th Street, 8th Floor<br>New York, NY 10019<br>(212) 901-3825<br>bwhite@blochwhite.com<br>mbloch@blochwhite.com<br>agerber@blochwhite.com<br>calvarez@blochwhite.com<br><br>*Counsel for Plaintiff Jocelyn Rivera* |

/s/ Tiffinay Pagni, Esq.
Tiffinay Pagni, Esq. (admitted *pro hac vice*)
Vice-President & General Counsel
ADAMS AND ASSOCIATES, INC.
6151 Lakeside Drive, Ste. 1000
Reno, NV 89511
Tel.: (775) 348-0900
tpagni@adamsaai.com

*Counsel for Plaintiffs Adams and Associates, Inc. and Education & Training Resources, LLC*

/s/ Daniel J. Strouse
Daniel J. Strouse*
CORDATIS LLP
1011 Arlington Blvd. Suite 375
Arlington, VA 22209
Tel.: (202) 342-2550
dstrouse@cordatislaw.com

*Counsel for Plaintiff Alternate Perspectives, Inc.*

/s/ Carla M. Siegel
Carla M. Siegel (*pro hac vice* pending)
General Counsel
INTERNATIONAL ASSOCIATION OF MACHINISTS
AND AEROSPACE WORKERS, AFL-CIO
9000 Machinists Place
Upper Marlboro, MD 20772
Tel.: (301) 967-4510
csiegel@iamaw.org

*Counsel for Plaintiff Transportation Communications Union/IAM*

*\* Pro hac vice application forthcoming*
*\*\* Admission forthcoming*