**Hecker Fink LLP**

NEW YORK | WASHINGTON, DC | LOS ANGELES

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883
WWW.HECKERFINK.COM

mfeldman@heckerfink.com

June 30, 2025

**BY CM/ECF**

The Honorable Andrew L. Carter
United States District Court for the Southern District of New York
40 Foley Square, Room 444
New York, New York 10007

    Re: *NJCA et al v. DOL et al*, No. 25 Civ. 04641 (ALC)

Dear Judge Carter:

  We write on behalf of Plaintiffs in response to the Court's June 27, 2025 Order directing the parties to file letters "explaining how, if at all, the Supreme Court's ruling in *Trump v. Casa, Inc.* impacts this proceeding." ECF 60. *Casa* may signal a shift in the law of injunctive remedies, but it does not have any impact on this proceeding. *First*, the *Casa* Court *expressly declined* to address the "distinct question" whether a Court may set aside unlawful agency action under the Administrative Procedure Act ("APA"), as Your Honor did in this case. Accordingly, the APA-specific case law that this Court applied to impose a tailored, nationwide injunction remains fully applicable. *Second,* even assuming *Casa*'s holding applied to the remedy issued here (and it does not), *Casa* expressly permits the Court's remedy because setting aside Defendants' decision to eliminate Job Corps is necessary to accord complete relief to the plaintiffs in this case.

  *Casa* concerned the scope of equitable power granted by Congress to the federal judiciary in the Judiciary Act of 1789. *See Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *5 (U.S. June 27, 2025). Plaintiffs challenged Executive Order No. 14160, which sought to redefine birthright citizenship. *Id.* at *4. Three federal district courts issued injunctions that the Supreme Court characterized as "universal," meaning that the injunctions "barr[ed] various executive officials from applying the policy to *anyone* in the country." *Id.* at *5. The Government sought partial stays of the injunctions, to "limit them to the parties." *Id.*

  The Supreme Court granted those requests, in part. The Court determined that the only source of authority for the district courts' equitable power, in those cases, was the Judiciary Act of 1789, which "endowed federal courts with jurisdiction over 'all suits . . . in equity.'" *Id.* at *6. Because the Court determined that "the universal injunction lacks a historical pedigree," the Court partially stayed the universal injunctions, instructing that courts exercising their Judiciary Act power may only "administer complete relief *between the parties*." *Id.* at *3, *11.

  Nevertheless, the Court acknowledged that there may be cases where "it is all but impossible for courts to craft relief that is both complete *and* benefits only the named plaintiffs."

Hecker Fink LLP

2

*Id.* at *11 n.12. Likewise, the Court acknowledged that affording complete relief to the plaintiffs in a case could mean extending relief nationwide. Indeed, the Court recognized that, *in the cases before it,* the district courts had concluded, and might ultimately again conclude, that nationwide relief was necessary to afford complete relief to the plaintiffs in those cases. *See id.* at *12. Therefore, the Court partially stayed the district courts' injunctions "only to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue," and remanded to the district courts to address that question. *Id.*

The Supreme Court's holding does not reach the instant case, for two fundamental reasons.

*First,* as noted above, *Casa* concerned only the scope of federal district courts' equitable power under the Judiciary Act of 1789. The Court *expressly declined* to reach the "the distinct question whether the [APA] authorizes federal courts to vacate federal agency action." *Id.* at *8 n.10. In the APA, Congress granted power to the federal district courts, separate and apart from the equitable power granted to the courts in the Judiciary Act of 1789. Specifically, Congress expressly authorized courts to "set aside agency action," 5 U.S.C. § 706(2), and to "issue all necessary and appropriate process to . . . preserve status or rights pending conclusion of the review proceedings." *Id.* § 705.

The Supreme Court and the Second Circuit have long interpreted this grant of power to mean that courts may set aside agency action in full, rather than limiting the set-aside to plaintiffs who have challenged the action in a lawsuit.[1] This view is consistent with the understanding of the scope of judicial power with respect to agency action at the time the APA was enacted.[2] And, as Justice Kavanaugh repeatedly noted in his *Casa* concurrence, that understanding of the APA remains in place post-*Casa. See Casa*, 2025 WL 1773631, at *21 (Kavanaugh, J., concurring) ("Going forward . . . perhaps a district court . . . will grant . . . the functional equivalent of a universal injunction—for example . . . by preliminarily setting aside or declining to set aside an agency rule under the APA.").

---

[1] *See e.g., Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826 (2024) (Kavanaugh, J., concurring) ("The Federal Government and the federal courts have long understood § 706(2) to authorize vacatur of unlawful agency rules . . . ."); *id.* at 830-31 (Kavanaugh, J., concurring) ("Over the decades, this Court has affirmed countless decisions that vacated agency actions, including agency rules." (collecting cases)); *Dep't of Homeland Security v. Regents of Univ. of Cal.*, 591 U.S. 1, 9 (2020) (holding that the rescission of a major federal program "must be vacated"); *Dep't of Com. v. New York*, 588 U.S. 752, 771, 780 (2019) (affirming vacatur of Census Bureau action); *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 486 (2001) (holding EPA policy unlawful); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 215-16 (1988) (invalidating a retroactive HHS rule); *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41, 57 (1983) (setting aside NHTSA's revocation of seatbelts rule); *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 87-88 (2d Cir. 2020) (invalidating DHS rule); *Nat. Res. Def. Council, Inc. v. EPA*, 961 F.3d 160, 178 (2d Cir. 2020) (vacating EPA rule); *Nat'l Black Media Coal. v. FCC*, 791 F.2d 1016, 1020 (2d Cir. 1986) (invalidating FCC order); *see also Rural & Migrant Ministry v. EPA,* 565 F. Supp. 3d 578, 605–06 (S.D.N.Y. 2020) (holding that the court's stay of agency action challenged under § 705 "applied to all parties and not just to the parties before the [c]ourt").

[2] *See* Mila Sohoni, *The Past and Future of Universal Vacatur*, 133 Yale L.J. 2304, 2326 (2024) (collecting cases), *cited in Corner Post,* 603 U.S. at 827, 39-40 (Kavanaugh J., concurring).

Hecker Fink LLP

3

Against this backdrop, it is clear that the case law that this Court relied on to issue its tailored, nationwide injunction under the APA remains fully applicable.[3] *See Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 100–01 (2d Cir. 2021) (explaining that a Second Circuit decision remains "binding" "unless and until it is overruled … *en banc* or by the Supreme Court"). In *New York v. U.S. Department of Homeland Security*, a decision this Court held binding in this case, the Second Circuit stated that "when an agency action is found unlawful under the APA, the ordinary result is that the rules are vacated — not that their application to the individual petitioners is proscribed." ECF 57 at 20 (quoting 969 F.3d at 87). That understanding of the Court's power in APA cases remains true today.

*Second*, even if *Casa*'s holding concerning the scope of equitable power under the Judiciary Act of 1789 applied to this case under the APA (and as explained, *supra*, it does not), the Supreme Court's decision expressly permits this Court's injunction. That is because this Court's injunction is necessary to afford complete relief to the plaintiffs in this case.

Plaintiff National Job Corps Association ("NJCA") is a trade organization that represents all the stakeholders in the Job Corps program nationwide, including the Job Corps campus operators, staff, and students. *See* ECF 57 at 4; Hay-Jones Decl. ¶ 2. Defendants' attempted shutdown of the Job Corps program "threaten[s] the very existence of its organization . . . as there will be virtually no Job Corps centers left to advocate for," ECF 57 at 11-12, and "there will be no funding for members to pay their dues" to NJCA, *id.* at 11.[4] In these circumstances, anything short of a nationwide injunction "would not provide complete relief for the irreparable harms to the . . . Plaintiffs in their organizational . . . capacities." *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 25 Civ. 0946, 2025 WL 1187730, at *60 (D.D.C. Apr. 24, 2025). Furthermore, even if it were "theoretically possible" to tailor the injunction further, "such an approach would be impracticable." *Id.* at *60. For example, Plaintiff TCU operates training programs on campuses operated by non-parties to this case; simply vacating the termination notices issued to TCU would not afford TCU complete relief if Defendants were allowed to unlawfully shut down the campuses where TCU operates its programs. *See generally* Maratea Decl. ¶¶ 3-4 (describing scope of TCU's programs).[5]

\*   \*   \*

In sum, *Casa* does not impact this Court's June 25, 2025 Order or these proceedings more generally. A nationwide injunction was warranted at the time the Court issued its decision, and it remains warranted today.

---

[3] This Court's injunction was based entirely on its power under the APA. *See* ECF 57 at 20 ("Given that this is an action brought under the APA, the Court concludes that a nationwide injunction is appropriate."). Indeed, the Court expressly declined to reach Plaintiffs' non-APA claims. *See id.* at 17 n.9.

[4] The Operator Plaintiffs are contracted to operate approximately only 31 of the 99 contractor-operated Job Corps campuses, in 21 out of the 50 states, the District of Columbia, and Puerto Rico where Job Corps operates. *See* Fox Decl. ¶ 4; Larson Decl. ¶¶ 5, 11; Wild Decl. ¶ 4; Crowley Decl. ¶ 5.

[5] Conversely, non-party training organizations offer training programs on campuses operated by plaintiff operators; if the Court declined to vacate the termination notices to those training organizations, its injunction would not afford complete relief to the plaintiff operators.

Hecker Fink LLP

4

Respectfully submitted,

Max Feldman